[Cite as *State v. Talley*, 2018-Ohio-5065.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NOS. 2017-L-143** |
| | : | **2017-L-144** |
| TYREZ T. TALLEY, | : | |
| Defendant-Appellant. | : | |

Criminal Appeals from the Lake County Court of Common Pleas, Case Nos. 2017 CR 000040 and 2016 CR 001204.

Judgment: Affirmed.

*Charles E. Coulson,* Lake County Prosecutor, and *Karen A. Sheppert* and *Teri R. Daniel,* Assistant Prosecutors, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Charles R. Grieshammer*, Lake County Public Defender, and *Vanessa R. Clapp,* Assistant Public Defender, 125 East Erie Street, Painesville, OH 44077 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Tyrez T. Talley, appeals his conviction and sentence, following his guilty pleas in these consolidated cases to two counts of robbery. At issue is whether appellant received effective assistance of trial counsel and whether his consecutive sentence was contrary to law. For the reasons that follow, we affirm.

{¶2} On February 21, 2017, appellant waived his right to be charged by indictment and pled guilty to two, one-count informations. In each case, he pled guilty to robbery with a deadly weapon, a felony of the second degree, as charged.

{¶3} During the guilty plea hearing, the prosecutor informed the court what the evidence would have shown at trial. First, with respect to the September 2016 robbery, the prosecutor stated:

{¶4} [O]n September 10th of 2016, the Painesville Police Department was dispatched to the area of 199 Matthew Street in Painesville, Lake County, Ohio for an armed robbery report.

{¶5} When officers responded to that location, they spoke with 88-year-old Eleanor Battista, who indicated that she had been at the gas station on Richmond Street when * * *, as she was leaving the gas station, an individual came to her car wanting a ride. He got in the car and directed her to Matthew Street.

{¶6} At that time, the male, who was later identified as Tyrez Talley, had a small handgun and asked for her purse or for her money. She handed it to him, he tucked the purse under his shirt, got out of the car and walked away.

{¶7} The police were called because MaryAnn Spaller was sitting outside of 199 Matthew Street, and she saw a male leave the victim Miss Battista's car carrying an object under his jacket and saw that Miss Battista was upset. They both were able to give a description.

{¶8} Through investigation, officers went to the gas station and reviewed the video and saw Mr. Tyrez Talley in the video and would appear to have him getting into the side door of Miss Battista's car.

{¶9} In addition, through talking with [ot]her individuals, they learned that after being at the gas station, Mr. Talley went to 133 Jefferson Street where he indicated that he had robbed somebody, he had money on him as well as a BB gun. The BB gun was handed off to another person. It was later turned over to the police as the BB gun that had been used.

{¶10} When the defendant was arrested on December 5 of 2016 [on the second robbery], he spoke with police and admitted that he had been at the gas station and when the lady had pulled out on to Kerr

2

Avenue, he asked for a ride.  She allowed him in, he took the BB gun from his waistband, *made sure that she saw he had it on his lap* and asked her for the money. At that time she handed over her purse that had approximately between 100 * * * and $200.00 in it as well as credit cards and other items of hers.

{¶11} He indicated that the gun was handed off to another person, he did not know where it was.  At that time he was unaware that it had already been turned into the police.  That was a Crossman BB gun, magazine and CO cylinder.

{¶12} Obviously, Miss Battista had not given permission for him to take her items * * *.  (Emphasis added.)

{¶13} The trial court asked appellant's counsel if he had anything to add to the prosecutor's statement of the evidence, and counsel said he did not.  The trial court then asked appellant if the prosecutor's statement of the evidence was correct and *appellant stated it was*. The court asked appellant if he committed this theft against that 88-year old woman on September 10, 2016 and if he had with him that Crossman BB pistol, magazine, and CO cylinder, and he answered both questions in the affirmative. Appellant pled guilty to robbery.

{¶14} Next, with respect to the December 2016 robbery, the prosecutor stated:

{¶15} [O]n December 4th of 2016 shortly before 4:30 a.m., Painesville Police Department officers were dispatched and responded to the area of 503 Homeworth Avenue in Painesville, Lake County, Ohio for a report of an armed robbery.

{¶16} Upon going to that location, officers spoke with a Kandi Bell, who indicated that an individual, who was later identified as the defendant, Tyrez Talley, had stolen her purse with over a thousand dollars in it as well as credit cards and checkbook while she was inside a friend's home at 503 Homeworth.  The friend being Danielle Sanchez.  That in addition the driver's side front window had been broken out of [Ms. Bell's] vehicle.

{¶17} [Ms. Bell] was able to describe Mr. Talley as well as indicated that a Jimmie Davarian Rice was involved.  Mr. Rice was in the parking lot area of Homeworth Avenue.  Officers spoke with him.  He was in a

3

vehicle where [Ms. Bell] noticed a hammer in the front seat. It was later collected for evidence based on the broken window.

{¶18} Mr. Rice indicated he was not inside 503 Homeworth and that he had permission to have the vehicle. That he did see an individual run out of the front door of 503 Homeworth with a purse in his hand with Miss Bell following after. He did not give an identification of the individual and changed the subject readily.

{¶19} Miss Sanchez indicated that Miss Bell had been in her home with her purse and so had Tyrez Talley, the defendant. That [Ms. Sanchez] had stepped to the door and did not see the actual robbery occur, she was having Mr. Rice enter the door. Others were present. Mr. Clark and Mr. Walker indicated that Mr. Talley had grabbed Miss Bell's purse, she then grabbed his legs, Mr. Talley then removed a weapon, the firearm from his waistband, and pointed it at Miss Bell's head. They indicated *he * * * pulled the trigger, but it clicked and did not fire.*

{¶20} From the investigation, officers went to 718 Hine Avenue to Lisa Fedele's home knowing that Mr. Talley sometimes went to that location. They learned that he was in fact there. Upon speaking with Miss Fedele, this is on December 5th, she indicated that Mr. Talley had come to her home about 6:00 a.m. or so and had indicated that he and Mr. Rice had just stolen a purse from a woman and that Mr. Rice had broken out a window to see if the purse was in the car before it was taken from the apartment.

{¶21} When Mr. Talley was arrested and brought to the police department, he indicated that he in fact had been in 503 Homeworth, that he had been in and out at one time going to 509 Homeworth to get what he indicated was a BB gun, however it looked real and others believed it was because Mr. Rice had indicated the weapon was there for [Mr. Talley] to get so that he would take the purse from Miss Bell. [*Mr. Talley*] *indicated he did in fact take the purse as somebody was knocking on the door.* [Ms. Bell] grabbed his leg, he had to pull away from her. *He did indicate he pulled out the gun and threatened to shoot her.*

{¶22} He later indicated he went back to 509 Homeworth to meet with Mr. Rice where they argued about money. The purse was left at that apartment. Police were later able to retrieve the purse from the Putney residence at 509 Homeworth. No weapon was recovered.

{¶23} Nobody had permission to take the purse from Ms. Bell. (Emphasis added.)

4

**{¶24}** Again, the court asked appellant's counsel, who was not the same attorney representing appellant on the September case, if he had anything to add to this and he said he did not. Further, appellant advised the court that the prosecutor's statement of the evidence was true. He said that on December 6th, he committed this robbery against Kandi Bell with the gun. Appellant pled guilty to robbery.

**{¶25}** The trial court found appellant's guilty pleas were knowing, intelligent, and voluntary; accepted the pleas; and found him guilty of both counts of robbery.

**{¶26}** On April 5, 2017, the trial court sentenced appellant to five years in prison on each count of robbery, each term to be served consecutively to the other, for a total of ten years.

**{¶27}** Seven months later, on November 3, 2017, appellant filed a motion for leave to file a delayed appeal, which this court subsequently granted. On appeal, appellant asserts two assignments of error. For his first, he alleges.

**{¶28}** "The defendant-appellant was denied effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution and Article I, Section 10 of the Ohio Constitution."

**{¶29}** Appellant argues that his attorneys' representation was deficient in both cases because they advised him to plead guilty without advising him that the BB guns he used to commit these offenses may not have been deadly weapons.

**{¶30}** In order to support a claim of ineffective assistance of counsel, the defendant must satisfy a two-prong test. First, he must show the representation of trial counsel was deficient. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Second, the defendant must show the deficient performance prejudiced the defense. *Id*. at 689.

5

In order to satisfy this prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's * * * errors, the result of the [trial] would have been different." *Id.* A reviewing court "need not address both prongs of *Strickland* if an appellant fails to prove either prong." *State v. Carter*, 9th Dist. Summit No. 27717, 2017-Ohio-8847, ¶27.

**{¶31}** "In the context of a guilty plea, the defendant must demonstrate that there is a reasonable probability that, but for his counsel's error, he would not have pled guilty and would have insisted on going to trial." *State v. Gotel*, 11th Dist. Lake No. 2006-L-015, 2007-Ohio-888, ¶10, citing *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).

**{¶32}** A guilty plea waives all appealable errors, including claims of ineffective assistance of counsel, except to the extent that the errors precluded the defendant from knowingly, intelligently, and voluntarily entering his or her guilty plea. *State v. Frazier*, 2d Dist. Montgomery Nos. 26495 and 26496, 2016-Ohio-727, ¶81. The United States Supreme Court has observed:

> **{¶33}** When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann [v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) ]. *Tollett v. Henderson,* 411 U.S. 258, 267 (1973).

**{¶34}** Here, the record demonstrates appellant's guilty plea was knowing, intelligent, and voluntary. Appellant represented he understood the charges to which he was pleading guilty and the potential maximum sentence (eight years for each robbery count for a total of 16 years, if consecutive sentences were imposed). The

6

record further shows that appellant was not under the influence of drugs or alcohol; he understood the terms of the plea agreement, which were also set forth in written plea agreements he signed; he was not threatened or coerced into entering the pleas; and wanted to plead guilty in both cases. After the trial court fully informed appellant of his trial rights pursuant to Crim. R. 11, he waived those rights. Further, appellant said that he had enough time to consult with both attorneys; that he discussed all the issues in each case with them and they answered all his questions; that he was satisfied with both of his attorneys; that he was entering his guilty pleas freely and voluntarily; and that he wanted the court to accept his guilty pleas. We therefore hold that appellant's guilty plea was knowing, intelligent, and voluntary.

{¶35} Further, even if appellant's valid guilty plea did not negate his ineffectiveness claim, it would still lack merit. Appellant argues the state failed to prove the guns he used were deadly weapons because the state failed to prove the guns were capable of inflicting death. Thus, he argues his willingness to plead guilty based on facts that did not prove the deadly-weapon element of robbery shows he did not fully understand that element. As a result, he argues his attorneys' advice that he plead guilty resulted in pleas that were not knowing, intelligent, and voluntary.

{¶36} R.C. 2923.11(A) defines a "deadly weapon" as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried or used as a weapon." "Although it is not a firearm, a BB gun can be a deadly weapon if the BB is expelled at a sufficient rate of speed." *State v. Houston*, 8th Dist. Cuyahoga No. 100655, 2014-Ohio-3911, ¶17. *Accord State v. Valentin*, 11th Dist. Portage No. 2009-P-0010, 2009-Ohio-6038, ¶37. Whether a BB

7

gun is a deadly weapon is a factual issue to be determined by the trier of fact. *Houston* at ¶18.

**{¶37}** By pleading guilty, however, appellant admitted that (1) he used these guns in committing the robberies and that (2) they were deadly weapons. In light of appellant's guilty pleas, the state had no obligation to prove his guilt or that the guns were capable of inflicting death. Crim.R. 11. Further, appellant failed to present any affidavits or any evidentiary-quality material showing that anything the state presented at the plea hearing had any effect on his decision to plead guilty.

**{¶38}** In contrast to the definition of deadly weapon, "firearm" is defined in R.C. 2923.11(B) as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant." While having a firearm is a required element of a firearm specification, it is not required to prove robbery. Here, appellant was not charged with a firearm specification, but, rather, was only charged with robbery, and, thus, even if appellant had not pled guilty, the state would not have been required to prove that the BB gun was capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant.

**{¶39}** There are many different reasons a criminal defendant may choose to plead guilty, including the certainty of a plea bargain and/or the expectation of a favorable sentence. By pleading guilty, appellant avoided a trial and reduced the likelihood of receiving the maximum sentence. *See Gotel, supra*, at ¶20. By receiving ten years, appellant's sentence was in the mid-range of his potential 16-year sentence.

{¶40} Thus, even if appellant's valid guilty plea did not undermine his ineffectiveness claim, we could not conclude that counsel's performance was deficient.

{¶41} Further, while it is unnecessary to consider the second prong of the *Strickland* test due to appellant's failure to prove any deficiency on the part of his attorneys, appellant cannot meet this prong of the test because he admitted (1) that he understood the terms of the plea bargain and (2) that he was satisfied with the representation of his counsel. *Gotel* at ¶22. Moreover, there is no evidence in the record that appellant would not have pled guilty if his attorneys had told him the BB guns used here might not have been deadly weapons. Counsel's conjecture on this point simply does not suffice, especially since a BB gun can be a deadly weapon. Thus, we cannot conclude that appellant was prejudiced by any alleged deficient conduct on the part of his counsel.

{¶42} Appellant's first assignment of error lacks merit.

{¶43} For his second and last assigned error, appellant alleges:

{¶44} "The trial court erred by sentencing the defendant-appellant to consecutive prison sentences totaling 10 years."

{¶45} The Supreme Court of Ohio, in *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, held that appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2) when reviewing felony sentences. *Marcum* at ¶1. Thus, applying the plain language of that statute, the Supreme Court held that "an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *Id*. The clear and

9

convincing standard in R.C. 2953.08(G)(2) is highly deferential. *State v. Venes*, 8th Dist. Cuyahoga No. 98682, 2013-Ohio-1891, ¶21.

**{¶46}** Further, the Supreme Court of Ohio, in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, held that R.C. 2929.11 and R.C. 2929.12 do not mandate judicial fact-finding. *Foster* at ¶42. Rather, in sentencing a defendant on a felony, "a court is merely required to 'consider' the purposes and principles of sentencing in R.C. 2929.11 and the statutory * * * factors set forth in R.C. 2929.12." *State v. Lloyd*, 11th Dist. Lake No. 2006-L-185, 2007-Ohio-3013, ¶44. Further, "[a] trial court is not required to give any particular weight or emphasis to a given set of circumstances; it is merely required to consider the statutory factors * * *." *State v. Delmanzo*, 11th Dist. Lake No. 2007-L-218, 2008-Ohio-5856, ¶23. The trial court satisfies its obligation to consider the sentencing criteria in R.C. 2929.11 and R.C. 2929.12 by stating that it considered them. *State v. Brown*, 11th Dist. Lake No. 2014-L-075, 2015-Ohio-2897, ¶34.

**{¶47}** Appellant's argument rests primarily on R.C. 2929.14(C)(4), regarding consecutive sentences, which provides, in pertinent part:

> **{¶48}** If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

> **{¶49}** * * *

> **{¶50}** (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

10

**{¶51}** The Supreme Court of Ohio, in *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, held: "In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *Bonnell* at syllabus.

**{¶52}** If the trial court has properly made the required findings in order to impose consecutive sentences, an appellate court must affirm those sentences unless it clearly and convincingly finds that the record does not support the court's findings. *Venes, supra*, at ¶19.

**{¶53}** Appellant does not dispute that the trial court made the foregoing necessary findings for consecutive sentences. However, he argues the trial court erred in making the following two findings: (1) that such sentences are necessary to protect the public from future crime and to punish him, and (2) that his history of criminal conduct demonstrated consecutive sentences are necessary to protect the public from future crime. Appellant argues these findings were not supported by the record because he only has a history of misdemeanor conduct as an adult.

**{¶54}** However, the trial court was entitled to consider that, as a juvenile, in 2010, appellant was found delinquent for assault and receiving stolen property in two separate cases, placed on indefinite probation, and had seven probation violations. In 2012, he was found delinquent for obstructing official business and subsequently had three more probation violations, for a total of *ten* probation violations. As an adult, he was convicted of criminal damaging twice, contempt of court, possession of drug paraphernalia, domestic violence, and theft.

11

{¶55} Appellant argues on appeal that there are mitigating factors militating against consecutive sentences. He argues that, at the time he committed these crimes, he was addicted to crack cocaine and heroin and that his addictions caused him to commit these crimes. However, he argues he is no longer addicted to drugs, and, thus, a four-year concurrent sentence would be sufficient to punish him for the instant robberies and to deter him from future crimes. He also apologized to the victims. However, the trial court was not persuaded, stating:

{¶56} THE COURT: The difference between your situation and most that come in here [is that they] are coming in here for shoplifting or stealing something and returning it for money and then going to buy heroin. They are committing offenses that are related to their drug use, but not many of them pull guns on people and threaten them to the point where they believe that there is a real chance they are going to die. That's what makes this exponentially more serious than the guy stealing something off the shelf at Home Depot and exchanging it for a gift card and trading it for heroin.

{¶57} Now you've had this, by what I've heard from you and both your attorneys, you had this [drug] problem for a while, right? * * * So what have you done to address this problem?

{¶58} THE DEFENDANT: I was trying to get clean, you know, I was going to detox and all of it. It was just I couldn't get a job. I was going to temp agencies. It was just everything was getting hard to where I relapsed and that led into this situation. I haven't really addressed my problem * * * until sitting here in the situation to where I can't get myself out of, you know, I never tried to get help, never asked for help.

{¶59} THE COURT: Why not?

{¶60} THE DEFENDANT: Cause at that time I didn't see it as a problem. * * * I wasn't worried about hurting others. * * * I didn't see it as a problem, my only focus was to get high.

{¶61} We note that appellant's argument on appeal is different from his argument below. In contrast to his argument on appeal that he is no longer addicted to

12

drugs, he told the trial court he is still addicted to drugs and had not addressed his addiction.

{¶62} In analyzing the seriousness and recidivism factors in R.C. 2929.12 with respect to the circumstances presented here, the trial court stated:

> {¶63} Under factors that indicate the activity [is more serious], the victims suffered serious psychological harm and economic harm and also the fact that you acted with others in this criminal activity.
>
> {¶64} Under the factors indicating the activity is less serious, I don't find any applicable.
>
> {¶65} The factors that indicate recidivism is more likely, you were on probation at the time to the Painesville Municipal Court; you had a history of criminal convictions and adjudications; and you've been a probation violator in the past.
>
> {¶66} Under [the] less likely [to reoffend factors], I don't find any that are applicable.
>
> {¶67} So you have not overcome the presumption that a prison sentence should be imposed so you are * * * not amenable to community control and as I said at the beginning, Mr. Talley, this just isn't * * * some sort of hyper theft offense in order to feed a drug habit * * *. And the fact that you are feeding a drug habit, if that's truly what went on, that's a problem of your own doing obviously. You've been on probation before and you haven't addressed it * * *."

{¶68} While appellant argues the court erred in not weighing the seriousness and recidivism factors in his favor, he cannot reasonably dispute that the trial court considered these factors in fashioning his sentence.

{¶69} Thus, we cannot clearly and convincingly find that the record does not support the trial court's findings under R.C. 2929.14(C)(4) or that the court did not consider the seriousness and recidivism factors in R.C. 2929.12.

{¶70} Appellant's second assignment of error is without merit.

13

{¶71} For the reasons stated in this opinion, the assignments of error lack merit and are overruled. It is the order and judgment of this court that the judgment of the Lake County Court of Common Pleas is affirmed.


THOMAS R. WRIGHT, P.J.,

TIMOTHY P. CANNON, J.,

concur.