[Cite as *State v. Buckley*, 2019-Ohio-3991.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2018-L-118** |
| JAMES M. BUCKLEY, JR., | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 2018 CR 000127.

Judgment: Affirmed.

*Charles E. Coulson*, Lake County Prosecutor, and *Teri R. Daniel*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Vanessa R. Clapp*, Lake County Public Defender, and *Melissa Ann Blake*, Assistant Public Defender, 125 East Erie Street, Painesville, OH 44077 (For Defendant-Appellant).

MARY JANE TRAPP, J.

{¶1} Appellant, James Buckley ("Mr. Buckley"), appeals from the Lake County Court of Common Pleas' judgment entry, which sentenced him to a 27-month term of imprisonment for two counts of assault and imposed a total fine of $100 for one count of possession of marijuana and one count of illegal use or possession of marijuana drug paraphernalia.

{¶2} Mr. Buckley raises five assignments of error, contending: (1) he was denied effective assistance of counsel because his trial counsel stipulated the alleged victims, the peace officers, were "in the performance of their official duties," an element essential to enhancing the offense of assault from a first degree misdemeanor to a fourth degree felony, and further, his counsel failed to request a self-defense jury instruction; (2) the trial court committed plain error in not reading a self-defense instruction to the jury; (3) the trial court erred in denying his Crim.R. 29(A) motion for acquittal because the evidence was insufficient to support the elements of assault; (4) his conviction was against the manifest weight of the evidence; and lastly, (5) his 27-month term of imprisonment is contrary to law.

{¶3} We disagree and affirm the judgment of the Lake County Court of Common Pleas. Mr. Buckley failed to introduce any evidence to support a theory of self-defense, thus neither his counsel nor the court erred in failing to request or give a self-defense jury instruction. Secondly, the record presents sufficient, undisputed evidence that the peace officers were in the performance of their official duties at the time of the assault. Thus, the fact that defense counsel stipulated to this element of the offense has no determinative bearing on the verdict. The state presented sufficient evidence on the elements of assault, and the manifest weight of the evidence more than supports the jury's verdict. Lastly, Mr. Buckley's sentence is not contrary to law since the trial court expressly found this crime to be more serious and recidivism less likely pursuant to R.C. 2929.12.

**Substantive and Procedural History**

{¶4} On March 16, 2018, Mr. Buckley was indicted on eight counts: two counts of assault to a peace officer, fourth degree felonies in violation of R.C. 2903.13(A);

2

obstructing official business, a fifth degree felony in violation of R.C. 2921.31; two counts of resisting arrest, a first degree misdemeanor in violation of R.C. 2921.33(B); possession of marijuana, a minor misdemeanor in violation of R.C. 2925.11; and illegal use or possession of marijuana drug paraphernalia, a minor misdemeanor in violation of R.C. 2925.141(C), both with forfeiture specifications pursuant to R.C. 2941.1417 and 2981.04 for possessing contraband (marijuana and a smoking pipe) that was used in the commission or facilitation of the offense; and lastly, one count of open container, a minor misdemeanor in violation of R.C. 4301.62(B)(4).

{¶5} The state dismissed the charges of resisting arrest, obstructing official business, and open container prior to trial. Mr. Buckley elected to bifurcate the trial, choosing to try the counts of assault against a peace officer to a jury and the last two counts of possession of marijuana and illegal use or possession of marijuana drug paraphernalia to the court. The court found him guilty on those last two counts.

{¶6} The two counts of assault, which are the subject of this appeal, were tried before the jury in a two-day trial. The state presented the testimony of several peace officers, including the victims, Patrolman Ryan Heramb ("Officer Heramb") and Patrolman Paul Balongie ("Officer Balongie"); dispatchers Nina Lombardo-Mylott and Brad James; as well as Patrolman John Stirewalt, who assisted Officer Balongie with the investigation following Mr. Buckley's arrest. The state also introduced into evidence radio dispatch recordings, surveillance videos, and a dashcam video.

{¶7} Mr. Buckley presented the testimony of Joseph Coe ("Mr. Coe"), his cousin and owner of Vehicles Unlimited, an automotive service repair center located in Mentor, Ohio. Vehicles Unlimited is where Mr. Buckley works and where the incident occurred.

3

{¶8} The evidence and testimony reflects that at approximately 5:30 a.m. on Sunday, January 21, 2018, Officer Heramb was on patrol, assigned to "after 3 activity," which requires him to "engage in proactive patrol or business checks" between the hours of 3 a.m. and 6 a.m. He was driving by the front of a business when he noticed an occupied vehicle with the driver's side door open in the parking lot of Vehicles Unlimited, parked directly next to the side entrance door. Officer Heramb was aware there had been a rash of break-ins at local auto body shops and car dealership where vehicles were stolen and then used in later crimes, so he decided to investigate further.

{¶9} Officer Heramb saw someone in the vehicle. As he was pulling down the driveway, the officer also observed a male getting out of the vehicle, closing the door, and then walking toward the side entrance of the building. He radioed dispatch to advise of the activity.

{¶10} When Officer Heramb approached the vehicle, the male occupant had already entered the building. He noticed a strong odor of burnt marijuana and observed two open beer cans and a bag of marijuana in the center console and a smoking pipe on the floor board of the front of the driver's seat.

{¶11} Officer Heramb walked to the side door and asked the male who was standing just inside the glass door to step outside. The male refused to comply, shouting obscenities. Officer Heramb then asked the male if he had permission to be on the property. The man showed him the keys to the business and informed the officer he worked there. Officer Heramb did not ask Mr. Buckley for identification. While waiting for backup and for dispatch to contact Vehicles Unlimited's owner, Mr. Coe, Officer Heramb walked back to the vehicle and ran the plates, identifying the male as Mr. Buckley.

4

{¶12} Officer Balongie arrived on the scene to assist Officer Heramb. As Officer Balongie walked toward Officer Heramb by the door, Mr. Buckley walked out of view of the door into an interior office. Concerned that Mr. Buckley might be going out the front door, Officer Balongie was sent to the front corner of the building. Officer Heramb was also concerned about the possible availability of firearms or tools that could be used as weapons inside this business, and he did not know if there were others inside the building. He checked the door to see if it was locked, and it was not. He checked Mr. Buckley's truck door, and it was locked.

{¶13} Officer Heramb returned to the glass door, and Mr. Buckley came out of an office and approached the door. Officer Balongie returned from the front corner, and Officer Heramb advised him that he had criminal charges for Mr. Buckley. The plan was for Officer Heramb to open the door and Officer Balongie was to "reach in and escort him if [Mr. Buckley] refused to come out." Officer Heramb testified he decided to arrest Mr. Buckley rather than issue a citation because Mr. Buckley was "intoxicated and had a failure to appear for court in the past."

{¶14} Neither officer activated the in-car video and audio recording equipment before acting on their plan.

{¶15} While opening the door and stepping "about a foot or two" inside the building, Officer Heramb told Mr. Buckley he was "under arrest" and ordered him "to step out of the building." Officer Balongie was reaching inside toward Mr. Buckley when Mr. Buckley "sucker punched" him on the left side of his face. Mr. Buckley continued punching with both fists.

{¶16} Vehicles Unlimited's surveillance video showed the officers pulled Mr. Buckley outside, threw him to the ground, and forcibly placed Mr. Buckley's arms behind

his back. Officer Balongie then forcefully punched Mr. Buckley in the face to make him compliant.

{¶17} Officer Heramb was punched in the face, his microphone to his dispatch radio was torn off his uniform shirt, and he had a right forearm contusion and abrasion. Officer Balongie had swelling on the left side of his face and broke his right hand punching Mr. Buckley in the face.

{¶18} Mr. Coe testified that Mr. Buckley had been employed part-time for Vehicles Unlimited for approximately two years, and he had permission to work at any time and/or day and to sleep on the futon in the office. Mr. Buckley had both a key and an alarm code. For roughly two weeks before Mr. Buckley's arrest, Mr. Coe's office had been receiving calls from the Mentor police to verify if Mr. Buckley was allowed to be on the premises. Mr. Coe and his office manager assured the police Mr. Buckley had permission.

{¶19} Before the defense presented its case, the state and defense counsel agreed to stipulate that the peace officers were "in the performance of their official business," an essential element to enhancing the offense of assault from a first degree misdemeanor to a fourth degree felony.

{¶20} The jury returned a verdict of guilty on both counts of assault on a peace officer.

{¶21} At the sentencing hearing, the court considered the record, oral statements, the victim impact statement, the pre-sentence report and/or drug and alcohol evaluation, as well as the principles and purposes of sentencing in R.C. 2929.11 and the seriousness/recidivism factors in R.C. 2929.12. The court sentenced Mr. Buckley to serve a 27-month consecutive prison term (15 months on Count 1 and 12 months on

Count 2) and to pay a fine of $100 ($50 for the possession of marijuana and $50 for the illegal use/possession of marijuana drug paraphernalia).

{¶22} Mr. Buckley now timely appeals, raising the following five assignments of error:

{¶23} "[1.] The defendant-appellant's constitutional rights to due process and fair trial under the Fifth, Sixth and Fourtee[n]th Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution were prejudiced by the ineffective assistance of trial counsel.

{¶24} "[2.] The trial court committed plain error when in [sic] failed to read a self-defense instruction to the jury.

{¶25} "[3.] The trial court erred to the prejudice of the defendant-appellant when it denied his motion for acquittal made pursuant to Crim. R. 29(A).

{¶26} "[4.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence.

{¶27} "[5.] The trial court erred by sentencing the defendant-appellant to prison sentences totaling 27 months."

{¶28} For the sake of cohesion, we address Mr. Buckley's ineffective assistance of counsel claim last because he raises the same issues in his second and third assignments of error.

**Jury Instruction on Self Defense**

{¶29} In his second assignment of error, Mr. Buckley contends the trial court committed plain error by failing to instruct the jury on self-defense.

{¶30} "Pursuant to Crim.R. 30(A), the failure to object to a jury instruction in a timely manner generally constitutes a waiver of any claimed error relative to the

7

instructions." (Citations omitted.) *State v. Reeds*, 11th Dist. Lake No. 2007-L-120, 2008-Ohio-1781, ¶35. "Under Crim.R. 52(B), however, this court has the power to recognize plain error or defects involving substantial rights even if they are not brought to the attention of the trial court." (Citations omitted.) *Id.*

**{¶31}** "In the context of a criminal case, a court of review should invoke the plain error doctrine with the utmost caution, under exceptional circumstances, and only to prevent a miscarriage of justice." (Citations omitted.) *Id.* at ¶36; *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus. "Thus, plain error does not exist unless, but for the error, the outcome of the proceedings would have been different." (Citations omitted.) *Id.; Long* at paragraph two of the syllabus.

**{¶32}** "After arguments are completed, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." (Citations omitted.) *Id.* at ¶37.

**{¶33}** "In determining whether a self-defense jury instruction is warranted, we look to 'whether the defendant has introduced sufficient evidence, which, if believed, would raise a question in the minds of reasonable men concerning the existence of such issue.'" *State v. Imondi*, 11th Dist. Lake No. 2014-L-019, 2015-Ohio-2605, ¶17, quoting *State v. Melchior*, 56 Ohio St.2d 15 (1978), paragraph one of the syllabus.

**{¶34}** Self defense is an affirmative defense,[1] and a defendant attempting to invoke it must prove (1) he was not at fault for creating the situation, (2) he had a bona fide belief he was in imminent danger, (3) he did not violate a duty to retreat, and (4) the force used was necessary. (Citation omitted.) *Id.* at ¶18.

---

1. Am.Sub.H.B. No. 228 of the 132nd General Assembly, effective March 28, 2019, amended R.C. 2901.05 and inter alia, shifts the burden of proof for self-defense claims to the prosecutor.

8

{¶35} Our review of the record indicates there was insufficient evidence presented at trial to warrant an instruction on self-defense. Although Mr. Buckley contends he was not at fault for creating the situation that gave rise to the altercation, the evidence presented demonstrated otherwise.

{¶36} Watching from the side door of Vehicles Unlimited, Mr. Buckley observed Officer Heramb investigate his vehicle. When Officer Heramb approached Mr. Buckley and asked him to step outside, Mr. Buckley swore at the officer and told the officer he was on private property. He refused to leave the building and to speak with the officer. When Officer Balongie arrived to assist Officer Heramb, the officers again approached Mr. Buckley and decided to pull him outside of the building. Instead of obeying the officers' instructions to step outside and speak with them, Mr. Buckley threw a punch to evade arrest.

{¶37} Mr. Buckley failed to present any evidence that (1) he was *not* at fault in creating the situation, (2) he had a bona fide belief that he was in imminent danger, (3) he did not violate a duty to retreat, and (4) the force used was necessary. Mr. Buckley cannot now claim a self defense instruction was warranted when he failed to present any evidence to support such a defense.

{¶38} Mr. Buckley's second assignment of error is without merit.

**The Sufficiency of the Evidence**

{¶39} In his third assignment of error, Mr. Buckley challenges the sufficiency of the evidence as to the elements of assault and whether the peace officers were "in the performance of their official duties."

{¶40} "[T]he standard of review for a sufficiency of the evidence claim is 'whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most

9

favorable to the prosecution, any rational trier of fact could have found all the elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence.' * * * 'In essence, sufficiency is a test of adequacy[;] [w]hether the evidence is legally sufficient to sustain a verdict * * *.'" (Citations omitted.) *State v. Rice*, 11th Dist. Lake Nos. 2018-L-065 & 2018-L-066, 2019-Ohio-1415, ¶65. "Sufficiency of the evidence tests the burden of production." *Id.; see also State v. Thompkins*, 78 Ohio St.3d 380, 390 (1997) (Cook, J. concurring).

{¶41} Mr. Buckley was charged with two counts of assault of a peace officer under R.C. 2903.13(A) which provides: "[n]o person shall knowingly cause or attempt to cause physical harm to another[.]" Generally, assault is a misdemeanor of the first degree. R.C. 2903.13(C)(1). Pursuant to R.C. 2903.13(C)(5), where the victim of the offense is a peace officer engaged in the performance of his official duties, the crime is elevated to a felony of the fourth degree. Furthermore, a person acts "knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶42} Accordingly, the state was required to introduce sufficient evidence that Mr. Buckley (1) knowingly caused or attempted to cause (2) physical harm (3) to another. A review of the evidence and testimony presented at trial confirms the state more than met its burden of production on these elements.

{¶43} The evidence demonstrated that prior to the incident, Mr. Buckley was attempting to evade arrest. The surveillance video shows Officer Heramb investigating the inside of Mr. Buckley's vehicle with a flashlight, which Mr. Buckley knew contained two open containers of beer and a bag of marijuana in the center console in plain view of

10

anyone walking past the vehicle. Officer Heramb testified that after he observed the alcohol and marijuana in Mr. Buckley's vehicle, he approached the side door of Vehicles Unlimited, saw Mr. Buckley watching him and asked him to step outside to talk to him. Mr. Buckley replied, "Fuck you. You're on private property. You can get the fuck out of here now."

{¶44} Mr. Buckley refused to talk to the officer and walked further into the building, out of view. Officer Heramb testified he was concerned for his safety since he did not know if Mr. Buckley had a gun or could access tools inside the building that could be used as a weapon. When Officer Balongie arrived to assist Officer Heramb, Officer Heramb informed him he had decided to arrest Mr. Buckley and the plan was to open the unlocked door to the building and escort Mr. Buckley outside of the building. When Officer Balongie opened the door to the business and Officer Heramb told Mr. Buckley he was being arrested, Mr. Buckley punched Officer Balongie and then Officer Heramb.

{¶45} More specifically, both Officer Heramb and Officer Balongie testified they were punched in the face and suffered from visible swelling. Mr. Buckley punched Officer Balongie on the left side of his face with a closed right fist. When Officer Heramb attempted to assist, Mr. Buckley punched him in the face and tore off the officer's microphone that was attached to his uniform.

{¶46} In addition to the officers' testimonies, the state introduced photographs of the victims' injuries taken after Mr. Buckley's arrest and the police incident reports.

{¶47} It is inarguable that when someone punches another person he or she "knowingly" attempts to cause a certain result, i.e., physical harm to that person. "To act knowingly, a defendant merely has to be aware that the result may occur, and it is not necessary to demonstrate that the defendant intended to cause physical injuries."

11

(Citations omitted.) *State v. Ford*, 12th Dist. Butler No. CA2009-01-039, 2009-Ohio-6046, ¶49. In this case, there was more than sufficient evidence that Mr. Buckley intended to punch the officers in an attempt to avoid arrest and speaking with the officers.

{¶48} Mr. Buckley also argues there was insufficient evidence that the peace officers were "in the performance of [their] official duties." We addressed this argument in *State v. Duvall*, 11th Dist. Portage No. 95-P-0140, 1997 WL 360695 (June 6, 1997), where we found a peace officer was "in the performance of [his] official duties" when the officer was "off duty" serving as a security guard for a high school football game. *Id.* at *5. We explained that to determine what comprises a peace officer's official duties, the court must examine the activities the officer was engaging in when he was assaulted. *Id.* "If the peace officer was engaging in a duty imposed upon him by statute, rule, regulation, ordinance or usage, regardless of his duty status, that officer is 'in the performance of [his] official duties' for purposes of R.C. 2903.13(C)(1)." *Id.*

{¶49} There is no question both officers were "on duty" and actively on patrol, working their assigned shifts for the Mentor police department. Both officers were attempting to arrest Mr. Buckley in their capacities as peace officers after Officer Heramb observed Mr. Buckley get out of a vehicle and then observe violations of law, i.e., there were open containers of alcohol and illegal drugs in plain view inside Mr. Buckley's vehicle. "* * * [G]enerally, if a peace officer is in the act of arresting an individual in his jurisdiction, he would be in the performance of his official duties, as a peace officer is empowered and instructed to arrest individuals who are found violating the laws of this state." *Id.*

{¶50} We note that in Mr. Buckley's ineffective assistance of counsel assignment of error, he raises as an issue the stipulation by defense counsel that the peace officers

were in the performance of their official duties. Even if defense counsel had not stipulated to this fact, there is more than sufficient evidence to prove that Officer Heramb and Officer Balongie were in the performance of their official duties, i.e., they were in the act of arresting Mr. Buckley, an individual in their jurisdiction while on active patrol. "The State is not required to demonstrate that the accused knew or was aware of the fact that the victim was a peace officer, in order to elevate the offense of assault from a misdemeanor to a fourth-degree felony under R.C. 2903.13(C). * * * The General Assembly has articulated the elements of R.C. 2903.13 with sufficient clarity to indicate that the victim's status as a police officer shall elevate the criminal offense of assault from a misdemeanor of the first degree to a felony of the fourth degree regardless of whether or not the accused specifically knows of the victim's status as a peace officer." (Citations omitted.) *State v. Kovacic*, 11th Dist. Lake No. 2010-L-018, 2010-Ohio-5663, ¶48.

{¶51} Buckley also argues that the peace officers were not in the "performance of [their] official duties" because they were unlawfully arresting him for a minor misdemeanor offense. The facts of this case are troubling inasmuch as one would expect the officer to issue a citation rather than entering a building without a warrant to undertake an arrest of an individual who displayed a set of keys when asked if he had permission to be in the building. Mr. Buckley had no outstanding warrants. The officers did not ask for identification and did not wait to learn from dispatch whether the building owner had been contacted to confirm the vehicle and the person in it had permission to be there.

{¶52} R.C. 2935.26(A) statutorily allows arrests for minor misdemeanor offenses under certain circumstances, i.e., if the offender requires medical care or is unable to provide for his own safety, cannot or will not offer satisfactory evidence of his identity, refuses to sign the citation, or was previously issued a citation for the commission of that

13

misdemeanor and failed to appear or sign a plea of guilty/waiver of trial and pay the fine and costs. *Id.* at (1)-(4). Officer Heramb testified he decided to make an arrest because of Mr. Buckley's intoxication (presumably inferred intoxication from observing open containers of alcohol in the truck because he did not notice the odor of alcohol until after the altercation) and learning of a prior failure to appear for a court appearance via a LEADS check by dispatch. Reliance on inferred intoxication and/or the prior failure to appear is a slim reed at best.

{¶53} Initially, we note that Mr. Buckley did not directly challenge the manner in which the arrest was carried out. But first and foremost, we note that even if the officers were in the midst of unlawfully arresting Mr. Buckley, they would still be acting in their official capacity as peace officers in the performance of their official duties. "[A]n arrested person is not immune from prosecution merely because of the fact that his arrest was 'unlawful' or 'unauthorized.' * * * Rather, the issue is whether any of the evidence used to convict a defendant subjected to an unlawful or unauthorized arrest was inadmissible." *Kettering v. Hollen*, 64 Ohio St.2d 232, 236 (1980), citing *State v. Holbert*, 38 Ohio St.2d 113 (1974). The marijuana-related convictions relied on evidence that was in plain view; thus, there was no exclusionary rule issue in this case.

{¶54} Moreover, and critical to the outcome in this case, an illegal arrest or one undertaken upon a mistake of law does not give one license to assault a police officer. "An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction." *State v. Coppock*, 103 Ohio App.3d 405, 413 (2d. Dist.1995), citing *United States v. Crews*, 445 U.S. 463, 474 (1980); *State v. Reymann*, 55 Ohio App.3d 222 (9th Dist.1989).

14

{¶55} Again, Mr. Buckley did not directly challenge the admissibility of the evidence of the assault, but had he, persuasive case law informs us that even when police officers unlawfully arrest someone who responds to the arrest by physically attacking the officers, the assault is a new and independent crime and evidence of this crime is admissible. *State v. Roberts*, 2d Dist. Montgomery No. 23219, 2010-Ohio-300, ¶22.

{¶56} While the resisting arrest charge against Mr. Buckley was dismissed, the case law addressing conduct in resisting arrest charges is cogent to our analysis. Unlike the common law rule, the Supreme Court of Ohio, beginning with *Columbus v. Fraley*, 41 Ohio St.2d 173 (1975), has essentially abrogated the privilege to forcefully or violently resist an unlawful arrest. *Fraley* involved a violation of city ordinances prohibiting the use of obscene language on a public street and assaulting a police officer. The defendant argued that if her arrest for the alleged use of obscene language was illegal, she was privileged to use force in resisting it. The Supreme Court of Ohio disagreed. The court held "in the absence of excessive or unnecessary force by an arresting officer, a private citizen may not use force to resist arrest by one he knows, or has good reason to believe, is an authorized police officer engaged in the performance of his duties, whether or not the arrest is illegal under the circumstances." *Id.* at 180.

{¶57} The court extended this concept to warrantless entry onto a business premises in *State v. Pembaur*, 9 Ohio St.3d 136 (1984), and the Eighth District extended the concept to a private residence, holding that "violence against an officer after he has gained entrance into a residence, albeit unlawfully, with a purpose to cause physical injury rather than to resist entry, is not privileged conduct." *Middleburg Hts. v. Theiss*, 28 Ohio App.3d 1,5 (8th Dist.1985).

**{¶58}** As the Eighth District reasoned in *Theiss,* Mr. Buckley's assault charge does not relate to the entry of the business. Rather, the charge stems from an assault on the police officers with the intent to cause injury after access had been gained.

**{¶59}** Mr. Buckley's third assignment of error is without merit.

### The Manifest Weight of the Evidence

**{¶60}** In Mr. Buckley's fourth assignment of error, he argues the manifest weight of the evidence does not support the jury's guilty verdict.

**{¶61}** "When reviewing a claim that a judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered." (Citations omitted.) *Rice* at ¶81. *See also Thompkins* at 387.

**{¶62}** "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against a conviction. * * * The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion. * * * The reviewing court must defer to the factual findings of the trier of fact as to the weight to be given to the evidence and credibility of witnesses." (Citations omitted.) *Id.* at ¶82.

**{¶63}** As addressed above, there is more than sufficient evidence from which the jury could conclude Mr. Buckley assaulted the peace officers when they tried to arrest him. Further, the manifest weight of that evidence is heavily in support of the jury's verdict.

**{¶64}** Mr. Buckley attacks the credibility of the officers' testimony as compared to the surveillance video, which does not show Mr. Buckley punching the officers. The video only shows the officers forcing Mr. Buckley to the ground, handcuffing him, and punching him in the head. He also contends it is highly suspect that both officers did not activate the in-car recording devices before engaging Mr. Buckley as policy requires. Thus, he argues the testimony of the patrolman "lacked reliability and credibility, was self-serving and was conflicting." While we agree the admitted failure to use available recording devices per departmental policy is troubling, the credibility of witnesses is for the jury to determine so long as the evidence supports the verdict.

**{¶65}** "It is well settled that when assessing the credibility of witnesses, '[t]he choice between the credibility of witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact.' * * * Furthermore, if the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict." (Citations omitted.) *Id.* at ¶84.

**{¶66}** Mr. Buckley's fourth assignment of error is without merit.

### Sentence as Contrary to Law

**{¶67}** In his fifth assignment of error, Mr. Buckley contends his sentence is contrary to law because the trial court failed to consider the seriousness and recidivism factors pursuant to R.C. 2929.12.

**{¶68}** "The Supreme Court of Ohio in *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, held that appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2) when reviewing felony sentences." *State v. O'Keefe*, 11th Dist. Lake No. 2018-L-088, 2019-Ohio-841, ¶15, citing *State v. Talley,* 11th Lake Nos. 2017-L-143 &

17

2017-L-144, 2018-Ohio-5065, ¶45, quoting *Marcum* at ¶1. "Thus, applying the plain language of that statute, the Supreme Court held that 'an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law.'" *Id.* "The clear and convincing standard in R.C. 2953.08(G)(2) is highly deferential." *Id.*, quoting *State v. Venes*, 8th Dist. Cuyahoga No. 98682, 2013-Ohio-1891, ¶21.

{¶69} Moreover, the Supreme Court of Ohio in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, held that R.C. 2929.11 and R.C. 2929.12 do not "mandate judicial fact-finding; rather in exercising its discretion, a court is merely required to 'consider' the purposes of sentencing in R.C. 2929.11 and the statutory guidelines and factors set forth in R.C. 2929.12." *Id.* at ¶16, quoting *State v. Lloyd*, 11th Dist. Lake No. 2006-L-185, 2007-Ohio-3013, ¶44, citing *Foster* at ¶36-42.

{¶70} Further, "sentencing consistency is not derived from the trial court's comparison of the current case to prior sentences for similar offenders and similar offenses." *Id.* at ¶17, citing *Lloyd* at ¶51, citing *State v. Spellman*, 160 Ohio App.3d 718, 2005-Ohio-2065, ¶12 (11th Dist.). "Instead, 'it is the trial court's proper application of the statutory sentencing guidelines that ensures consistency.'" (Citation omitted.) *Id.* "Thus, in order to show a sentence is inconsistent, a defendant must show the trial court failed to properly consider the statutory guidelines and factors." *Id.*

{¶71} A review of the sentencing hearing transcript and the trial court's judgment entry demonstrates the trial court expressly considered the seriousness and recidivism factors contained in R.C. 2929.12. In terms of factors that make a crime more serious, the court emphasized that there "were serious physical injuries caused to the victim.

18

Specifically, the broken right hand with respect to Officer Balongie. Also, right forearm contusion and abrasions based upon the record with respect to Officer Heramb, both being police officers." The court found no factors making the crimes less serious than normal.

{¶72} As for recidivism, the court considered Mr. Buckley's prior criminal convictions, which included two separate drug abuse felonies, a resisting arrest conviction, a drug paraphernalia violation, two separate possession of drugs convictions, and five OVI convictions, as well as a prior prison history. Mr. Buckley did not respond favorably to previous sanctions, and his record reflected three separate probation violations. In addition, Mr. Buckley violated the terms of his bond in this case by using illegal substances, specifically marijuana, having tested positive as a result of a sample given on the day the verdict was announced in court. Mr. Buckley had been given the opportunity to complete numerous treatment programs, yet he was negatively discharged from four of those. The court found no factors indicating recidivism less likely since Mr. Buckley did not take responsibility for his actions and showed no remorse for his actions.

{¶73} The trial court satisfies its obligation to consider the seriousness and recidivism factors by stating it considered them. *O'Keefe* at ¶20, citing *Lloyd* at ¶44. "'[T]he trial court is not obligated * * * to give any particular weight or consideration to any * * * sentencing factor.'" (Citations omitted.) *Id.*

{¶74} In the present case, the trial court more than satisfied its obligations by particularly reviewing each factor, specifically detailing its considerations. There is nothing in the record to indicate Mr. Buckley's sentence is contrary to law.

{¶75} Mr. Buckley's fifth assignment of error is without merit.

**Ineffective Assistance of Counsel**

{¶76} In Mr. Buckley's first assignment of error, he contends his counsel was ineffective in two respects: (1) by stipulating that the victims were peace officers "in the performance of [their] official duties, thereby enhancing the offense of assault from a first degree misdemeanor to a fourth-degree felony, and (2) failing to request a self-defense jury instruction.

{¶77} "In determining whether counsel's performance constitutes ineffective assistance, an appellate court must find that counsel's actions fell below an objective standard of reasonableness and that appellant was prejudiced as a result." (Citations omitted.) *State v. Stoutamire*, 11th Dist. Trumbull No. 2008-T-0108, 2009-Ohio-6228, ¶50; *see also Strickland v. Washington*, 466 U.S. 668, 687-694 (1984). "In performing its review, an appellate court is not required to examine counsel's performance under the first prong of the *Strickland* test if an appellant fails to prove the second prong of prejudicial effect." (Citations omitted.) *Id.* at ¶50. "In demonstrating prejudice, an appellant must show that there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different." (Citations omitted.) *Id.* Further, "[a] strong presumption exists that a licensed attorney is competent and that the challenged action is the product of sound trial strategy and falls within the wide range of professional assistance." (Citations omitted.) *Id.*

{¶78} Because we have separately addressed the underlying grounds for these two issues in Mr. Buckley's second and third assignments of error and found them to be without merit, Mr. Buckley's claims of ineffective assistance of counsel based upon the same grounds are likewise without merit. *See State v. Henderson*, 39 Ohio St.3d 24, 33 (1988) ("The grounds which underlie each of these instances have already been

separately addressed and found to be without merit.  Accordingly, we need not address the counsel-performance component of these grounds."); *State v. Hobbs*, 8th Dist. Cuyahoga No. 81533, 2003-Ohio-4338, ¶26.

{¶79}  Mr. Buckley's first assignment of error is without merit.

{¶80}  The judgment of the Lake County Court of Common Pleas is affirmed.


THOMAS R. WRIGHT, P.J.,

TIMOTHY P. CANNON, J.,

concur.