The STATE of Ohio, Appellee,

v.

SPELLMAN, Appellant.

[Cite as *State v. Spellman,* 160 Ohio App.3d 718, 2005-Ohio-2065.]

Court of Appeals of Ohio,
Eleventh District, Geauga County.

No. 2004–G–2565.

Decided April 29, 2005.

719

David P. Joyce, Geauga County Prosecuting Attorney, and Sheila M. Salem, Assistant Prosecuting Attorney, for appellee.

Mark B. Marein and Steven L. Bradley, for appellant.

COLLEEN MARY O'TOOLE, Judge.

{¶ 1} This appeal arises from the Geauga County Court of Common Pleas, wherein appellant, Michael W. Spellman, pleaded guilty to two counts of theft in office, felonies of the third degree; one count of aggravated theft, a felony of the third degree; one count of tampering with records, a felony of the third degree; one count of tampering with evidence, a felony of the third degree; one count of unauthorized use of a computer, a felony of the fifth degree; and 330 counts of forgery, felonies of the fifth degree. Spellman was sentenced to an aggregate term of ten years' imprisonment and ordered to pay restitution. The sentence imposed serves as the basis of the instant appeal.

{¶ 2} The following facts, contained within the record, are relevant to this appeal. On September 11, 2003, Spellman was indicted on multiple offenses, which all derived from his conduct while acting in his capacity as Clerk of Chester Township. Spellman was charged with two counts of theft in office, one count of aggravated theft, one count of tampering with records, one count of unauthorized use of a computer, one count of tampering with evidence, one count of obstructing justice, one count of receiving stolen property, and 333 counts of forgery. Each count of the indictment stemmed from Spellman's seven-year embezzling spree, which consisted of a monthly "skimming" of township funds. The funds enabled Spellman to embark on his journey to cultivate a Hollywood lifestyle in order to court the rich and famous. Specifically, Spellman used township money to purchase cars, clothing, and other accoutrements in order to facilitate the launching of his celebrity charity. Spellman traveled to Los Angeles on a regular basis, seeking to bring to life his Hollywood dream, at the expense of the township. Spellman was not able to see his dream realized, however, as an investigation commenced regarding the status of the township's finances.

{¶ 3} On January 13, 2004, a plea agreement was reached wherein Spellman entered pleas of guilty to two counts of theft in office, felonies of the third degree; one count of aggravated theft, a felony of the third degree; one count of tampering with records, a felony of the third degree; one count of tampering with evidence, a felony of the third degree; one count of unauthorized use of a computer, a felony of the fifth degree; and 330 counts of forgery, felonies of the fifth degree. By agreement of the parties, the four theft-related offenses and two tampering offenses were deemed allied offenses of similar import pursuant to R.C. 2941.25(A). The parties also agreed that Spellman would pay restitution in the amount of $4,286,893.46.

{¶ 4} Prior to sentencing, both the state and Spellman filed sentencing memorandums containing recommendations regarding the imposition of sentence. The matter came before the trial court on March 4, 2004, at which time the trial court accepted the guilty plea and subsequently entered judgment. Spellman was sentenced to two four-year terms of imprisonment on the felonies of the third degree to run consecutively to each other; four six-month sentences on the felonies of the fifth degree to run consecutively to each other and the prior four-year terms, and a fifth six-month sentence to run concurrently with the previous sentencing. Thus, Spellman was sentenced to an aggregate term of ten years and ordered to pay restitution in the amount of $4,286,893.46.

{¶ 5} Spellman subsequently filed this present appeal, citing two assignments of error. The first assignment of error is:

{¶ 6} "The trial court did not ensure that the sentence it imposed was consistent with and proportionate to sentences being imposed upon similar situated offenders committing similar offenses."

{¶ 7} In his first assignment of error, Spellman contends the trial court erred in failing to impose a sentence consistent with and proportionate to sentences that have been imposed on similar offenders who have committed similar offenses.

{¶ 8} R.C. 2929.11(B) provides that a "sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."

{¶ 9} Pursuant to R.C. 2953.08, an appellate court reviews a felony sentence de novo. *State v. Wilson* (June 23, 2000), 11th Dist. No. 99–L–026, 2000 WL 816641, at *2, 2000 Ohio App. LEXIS 2766, at *4. When sentencing a felony offender, the trial court must impose a sentence that is reasonably calculated to achieve the overriding purposes of sentencing, which are to protect the public from future crimes by the offender and others and to punish the offender. R.C. 2929.11(A). Moreover, a reviewing court will not disturb a defendant's sentence absent a finding, by clear and convincing evidence, that the record does not support the sentence or that the sentence is contrary to law. *State v. Thomas* (July 16, 1999), 11th Dist No. 98–L–074, 1999 WL 535272, at *4, 1999 Ohio App. LEXIS 3334, at *10.

{¶ 10} In his brief, Spelling does not reference any evidence of similarly situated offenders who have committed similar offenses receiving lighter sentences to bolster his argument of proportionality and consistency. Rather, he refers to the Ohio Sentencing Commission and *State v. Lyons*, 8th Dist. No. 80220, 2002-Ohio-3424, 2002 WL 1454061. In *Lyons*, the Eighth District held, "The mandate for consistency is contained within the statutory provision addressing the purposes of felony sentencing and is directed to the trial court. We, therefore, believe that it is the trial court's responsibility to insure that it has the appropriate information before it when imposing sentence in order to comply with the purposes of felony sentencing." Id. at ¶ 30.

{¶ 11} In his sentencing memorandum, Spellman referenced two other federal cases wherein individuals had recently been convicted of similar offenses and had received proportionately lighter sentences. The first case involved a defendant who was sentenced to seven years' imprisonment in an investment-fraud scheme in which the losses to investors totaled between $40 million and $80 million. The

second was a defendant who was sentenced to 64 months' imprisonment for misappropriating $87 million in a securities-fraud scheme.

{¶ 12} We agree with the rationale of the *Lyons* court insofar as the trial court must adhere to the statutory mandate to ensure consistency in sentencing. However, we note, as that court did, that the trial court is required to make its sentencing decisions in compliance with the statute but need not specifically comb the case law in search of similar offenders who have committed similar offenses in order to ascertain the proper sentence to be imposed.

{¶ 13} In the instant case, the trial court properly adhered to its statutory mandate when it imposed sentence. The trial court acknowledged that, as a public official, Spellman had a fiduciary duty to maintain the Chester Township funds and chose to disregard that duty for several years by engaging in a pattern and practice of deceiving the public and absconding with public monies to the detriment of the community. Therefore, we conclude the trial court did not disregard the statutory mandate requiring consistency in felony sentencing.

{¶ 14} Spellman's first assignment of error is without merit.

{¶ 15} The second assignment of error is:

{¶ 16} "The trial court erred by imposing consecutive sentences when it did not make the requisite statutory findings on the record to justify imposition of consecutive sentences."

{¶ 17} In his second assignment of error, Spellman contends that the trial court improperly sentenced him to consecutive sentences, as it failed to adhere to the statutory requirements.

{¶ 18} Before imposing consecutive sentences, the trial court must determine that they are "necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." R.C. 2929.14(E)(4).

{¶ 19} The trial court must also determine that one of the factors enumerated in R.C. 2929.14(E)(4)(a) through (c) is also present: (a) that the offender was awaiting trial or sentencing or was under a community-control sanction; (b) the harm caused by the offenses is so great that a single term of imprisonment would not adequately reflect the severity of the conduct; or (c) the offender's prior criminal history demonstrates that consecutive sentences are necessary to protect the public from future criminal activity.

{¶ 20} Moreover, the Supreme Court of Ohio has held that this two-part finding set forth in R.C. 2929.14(E)(4) must be conducted on the record in open

court at the sentencing hearing and not merely in the written judgment entry. *State v. Comer*, 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473.

{¶ 21} In the case sub judice, the trial court made the following findings at the sentencing hearing:

{¶ 22} "[A]lthough there are consecutive prison terms imposed it is my finding that they are necessary to protect the public from future crime and to punish you for your conduct. These sentence[s] in my opinion are not disproportionate to the seriousness of your conduct or to the danger that such conduct poses to the public, not specifically from you, but from anyone in public office that has the opportunity of abuse.

{¶ 23} "Further, since these offenses were committed as a course of conduct over approximately seven years, the harm caused by them is so great and so unusual that no single prison term for any individual offense adequately reflects the seriousness of your course of conduct.

{¶ 24} "And, again, the record clearly reflects the nature and extent of your conduct at the time of the commission of the various offenses. Is there an element of contribution by the Forgery counts? Is that, in fact, part of a modus operandi on your part? Yes, it is. [Defense counsel] is correct in that regard. That doesn't change the reality. It doesn't change the reality that to impose concurrent sentences in your case would simply be wrong."

{¶ 25} Spellman avers that the trial court erred and deviated from the statutorily mandated sentencing scheme when it found that consecutive terms should be imposed based upon the danger posed to the public from anyone in public office, rather than upon the danger posed from Spellman specifically. In other words, Spellman contends the trial court was not permitted to consider Spellman's role as a public official when imposing consecutive sentences. Counsel for Spellman stipulated at oral argument that this case falls outside of *Blakely* and its progeny. *Blakely v. Washington* (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403.

{¶ 26} Initially, we note that throughout the sentencing hearing, the trial court referenced the extended duration of Spellman's conduct, as well as the extent of financial harm to Chester Township, and noted that these factors weighed heavily on its sentencing determination.

{¶ 27} Moreover, although Spellman was convicted on two counts of theft in office, felonies of the third degree that contain the necessary element that the offender be acting as a public official, the trial court did not err in considering Spellman's role as a public official in imposing consecutive sentences.

724

{¶ 28} The Fourth Appellate District recently considered a similar issue in *State v. McIver*, 4th Dist. No. 04CA594, 2005-Ohio-1296, 2005 WL 674488. In *McIver*, a village treasurer illegally drafted 50 checks totaling $40,000 and was subsequently found guilty of theft in office. The Fourth District held:

{¶ 29} "[W]e agree with the trial court that the appellant's position as an elected official makes her crime more egregious. * * * The citizens elected her to represent their interests in all matters concerning the village. She obviously violated that trust. Her capacity as an elected official, we believe, makes the crime more serious than if a similar crime had been committed by someone in whom such trust was not directly reposed." Id.

{¶ 30} That same rationale is apposite in the instant case. Spellman operated in a particular capacity as an elected official whom the people of Chester Township entrusted to maintain the financial affairs of the township. The nature and extent of Spellman's conduct over an extended time period in his role as a public official can operate to augment the seriousness of his conduct for sentencing purposes.

{¶ 31} Therefore, we conclude that the trial court adhered to the statutory mandates of R.C. 2929.14(E)(4) and did not err in imposing consecutive sentences.

{¶ 32} Spellman's second assignment of error is without merit.

{¶ 33} Based on the foregoing, the judgment of the Geauga County Court of Common Pleas is affirmed.

Judgment affirmed.

DONALD R. FORD, P.J., concurs.

WILLIAM M. O'NEILL, J., dissents.

WILLIAM M. O'NEILL, Judge, dissenting.

{¶ 34} This is a classic case in which the appellant should truly be cautious about what he wishes for. The peril in revisiting this sentence with its potential for "stacking" of 330 minimum six-month sentences is obvious on its face. Having said that, however, I must respectfully disagree with the majority regarding the second assignment of error. Although the majority notes that defense counsel stipulated at oral argument that this case falls outside of *Blakely v. Washington*, I disagree and believe this matter requires a sentencing evaluation pursuant to *Blakely*.[1] In its judgment in *Blakely v. Washington*, the United States Supreme Court made it clear that judges making "findings" outside a

---

1. *Blakely v. Washington* (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403.

jury's determinations in sentencing violated constitutional guarantees.[2]  Specifically, the court held:

{¶ 35} "Our precedents make clear, however, that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* * * * In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings.  When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment,' * * * and the judge exceeds his proper authority." [3]

{¶ 36} Thus, it is clear that the statutory judicial "findings," which provide the framework for all sentencing in Ohio, are prohibited by the United States Supreme Court.

{¶ 37} Following the United States Supreme Court's release of *Blakely*, this court determined that a trial court's reliance on a previous conviction as evidenced in the record would still be permissible for the purpose of imposing a sentence greater than the minimum.[4]  As stated by this court in *State v. Taylor*:

{¶ 38} "Under R.C. 2929.14(B)(1), the court is entitled to depart from the shortest authorized prison term if the 'offender previously had served a prison term.'  Under *Apprendi*, the fact of a prior conviction may be used to enhance the penalty for a crime without being submitted to a jury and proven beyond a reasonable doubt.[5]  [Citations omitted.]  According to Taylor's presentence investigation report, Taylor had served at least one prior prison term.  * * * Therefore, the trial court's imposition of prison terms of three years, * * * 17 months * * * and 11 months * * * are all constitutionally permissible under *Apprendi* and, by extension, *Blakely*." [6]

{¶ 39} It is clear that, for *Blakely* purposes, a trial court is permitted to take judicial notice that a defendant has served a prior prison term, for that is not a "finding."  It is a judicial acknowledgement of an indisputable fact.  The trial

---

2.  Id.

3.  (Emphasis in original and internal citations omitted.)  Id., 542 U.S. 296, 124 S.Ct. at 2537, 159 L.Ed.2d 403.   ·

4.  *State v. Taylor*, 158 Ohio App.3d 597, 2004-Ohio-5939, 821 N.E.2d 192.

5.  *Apprendi v. New Jersey* (2000), 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435, citing *Jones v. United States* (1999), 526 U.S. 227, 243, 119 S.Ct. 1215, 143 L.Ed.2d 311, fn. 6.

6.  *State v. Taylor* at ¶ 25.

court merely acknowledges the prior prison term and does not have to weigh conflicting evidence to make a factual finding. Therefore, a defendant's Sixth Amendment rights are not compromised by the exercise.

{¶ 40} I believe that a distinction must be made between "findings," which courts make to justify consecutive sentences, and "acknowledging" the existence of a prior sentence in a criminal matter, which would permit the court to exercise its discretion in departing from a minimum sentence. Clearly, *Blakely* no longer permits courts in Ohio to "find" that a defendant has committed the "worst form of the offense" or that his actions predict the "greatest likelihood of recidivism" without either an admission by the defendant or a finding by the trier of fact. Spellman has no record.

{¶ 41} In the instant case, the trial court followed the Ohio statutory sentencing scheme when it imposed consecutive sentences. Specifically, the court stated:

{¶ 42} "[A]lthough there are consecutive prison terms imposed it is my finding that they are necessary to protect the public from future crime and punish you for your conduct. These sentence[s] in my opinion are not disproportionate to the seriousness of your conduct or to the danger that such conduct poses to the public, not specifically from you, but from anyone in public office that has the opportunity of abuse.

{¶ 43} "Further, since these offenses were committed as a course of conduct over approximately seven years, the harm caused by them is so great and so unusual that no single prison term for any individual offense adequately reflects the seriousness of your course of conduct."

{¶ 44} Thus, the trial court imposed sentences based upon the framework set forth in R.C. 2929.14(E)(4). However, those very independent judicial findings required by the statute do not survive the Sixth Amendment scrutiny espoused in *Blakely*. The particular implications of a resentencing under *Blakely* were not lost on defense counsel in this matter. As Spellman plead guilty to 330 counts of forgery as well as a number of other felonies, the imposition of minimum sentences alone on each count would increase his prison term tenfold. In any event, I respectfully dissent, as I believe the matter must be remanded for resentencing in accordance with *Blakely*.