[Cite as *State v. Amero*, 2023-Ohio-345.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- v -

LAURA E. AMERO,

        Defendant-Appellant.

CASE NO.  2020-P-0029

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2019 CR 00366

## O P I N I O N

Decided: February 6, 2023
Judgment: Affirmed in part and reversed and modified in part

*Victor V. Vigluicci*, Portage County Prosecutor, and *Theresa M. Scahill*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*J. Gerald Ingram* and *Frank Louis Cassese,* Ingram, Cassese & Grimm, LLP, 7330 Market Street, Boardman, OH 44512 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, Laura Amero, appeals her sentence for Sexual Battery and Sexual Imposition in the Portage County Court of Common Pleas. For the following reasons, we affirm the individual prison terms ordered by the trial court but reverse the consecutive nature of the sentences and modify her total term of imprisonment to an aggregate term of five years.

{¶2} On April 19, 2019, Amero was indicted by the Portage County Grand Jury for two counts of Sexual Battery, felonies of the third degree, in violation of R.C.

2907.03(A)(7) and (B) ("[n]o person shall engage in sexual conduct with another * * * when * * * [t]he offender is a[n] * * * administrator * * * or other person in authority employed by or serving in a school * * * [and] the other person is enrolled in or attends that school"); two counts of Attempted Sexual Battery, felonies of the fourth degree, in violation of R.C. 2923.02(A) and R.C. 2907.03(A)(7) and (B); and two counts of Intimidation of a Victim or Witness in a Criminal Case, misdemeanors of the first degree, in violation of R.C. 2921.04(A), (D), and (E).

{¶3} A plea hearing was held on November 4, 2019, at which Amero entered a plea of guilty to two counts of Sexual Battery as stated in the indictment and an amended count of Sexual Imposition, a misdemeanor of the first degree, in violation of R.C. 2907.06. The convictions related to sexual acts involving two 16-year-old students while Amero was principal at Windham High School. A Written Plea of Guilty and Judgment Entry finding Amero guilty were filed on November 4, 2019. The remaining counts of the indictment were dismissed.

{¶4} Amero filed a Sentencing Memorandum on February 7, 2020. Attached were letters in support from family members and friends as well as two letters written by a psychologist from whom Amero had sought treatment during the investigation of this matter, Dr. Michael Smith. He stated that Amero had attended 23 treatment sessions as of January 28, 2020, and he considered her to pose "low to minimal risk to the safety and welfare of the general public." According to Smith, Amero responded well to therapeutic guidance and her risk of reoffending "has been substantially reduced."

{¶5} A sentencing hearing was held on February 10, 2020. The defense argued that Amero had family support, confessed when confronted by police, had taken

2

responsibility and resigned her position as superintendent shortly after being accused of the crimes, had engaged in counseling following the crimes, and had mental health issues including depression, anxiety, and eating disorders. Defense counsel emphasized Amero's lack of a criminal history and what she had done for the community and students when she worked for Windham. Amero apologized, highlighted the loss of her career and stated her responsibility for that loss. Defense counsel requested community control. The State noted that the victims were present in the courtroom and stated "they've asked the Court to consider their statements that they've made."[1] It requested she be ordered to serve a prison term.

{¶6} The court stated that it did not believe Amero committed the crimes due to mental illness and stated that it "can't understand how this keeps happening with teachers, superintendents, principals…". The court found consecutive sentences were "necessary to protect the public from future crimes and to punish the Defendant fairly," were "not disproportionate to the seriousness of the Defendant's conduct, and to the danger the Defendant poses to the public," two or more of the offenses were part of a course of conduct, and the harm was so great that no single prison term adequately reflected the seriousness of the conduct, emphasizing that Amero "destroyed" the community. The court imposed consecutive terms of five years in prison for each count of Sexual Battery and a concurrent term of 180 days for Sexual Imposition for a total term of 10 years in prison. The sentence was memorialized in a February 12, 2020 Order and Journal Entry.

---

1. No written or other victim impact statements are present in the record and, apart from the State's reference to statements made and the court's presumably boilerplate notation in its Judgment Entry that it reviewed "any victim impact statements," we do not find the record demonstrates they were filed or made part of the record. The State, which was given access to view the Presentence Investigation Report and sealed documents relating to sentencing through an August 27, 2020 Judgment Entry of this court, notes in its brief that the statements were not in the record. Amero also sets forth in her brief that any such statements and their content were not disclosed or provided to defense counsel.

3

In the entry, the court stated that it considered the evidence presented by counsel, oral statements, "any victim impact statements" and the defendant's statement, as well as the PSI, and the purposes of sentencing, and the need for deterrence, incapacitation, rehabilitation, and restitution. Amero was classified as a Tier III sex offender.

{¶7} Amero appealed from the foregoing sentence. Following briefing by the parties, the Ohio Supreme Court issued its opinion in *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, which addressed the proper appellate review of a trial court's application of the sentencing factors in R.C. 2929.11 and 2929.12. As it is pertinent to the present matter, a continuance was granted and the parties were permitted to submit supplemental briefs on the applicability of *Jones*.

{¶8} On appeal, Amero raises the following assignments of error:

{¶9} "[1.] The record clearly and convincingly establishes that the sentencing court misapplied and failed to properly consider the sentencing criteria contained in R.C 2929.11 and 2929.12 when it imposed maximum individual sentences of five (5) years on each count of sexual battery, in violation of R.C. 2907.03.

{¶10} "[2.] The trial court erred by imposing maximum consecutive sentences pursuant to R.C. 2929.14(C)(4) where the record clearly and convincingly does not support such a finding."

{¶11} In the first assignment of error, Amero argues that "the record did not support the individual maximum sentences in the case at bar" because the trial court did not properly apply the sentencing principles and factors in R.C. 2929.11 and .12, contending that the record did not demonstrate she posed a risk to the public or caused significant harm to the victims. In support, she cites to a factually similar case from this court, *State*

4

*v. Polizzi*, 11th Dist. Lake Nos. 2018-L-063 and 064, 2019-Ohio-2505, arguing that "the record in the instant case is even more devoid of justifications for maximum individual sentences than the record in *Polizzi*," where the appellant's sentence was reversed. In her supplemental brief, Amero emphasizes that she takes issue with the trial court improperly considering the R.C. 2929.12(B) "more serious factor" of the school official/student relationship.

{¶12} "The court hearing an appeal [of a felony sentence] shall review the record, including the findings underlying the sentence or modification given by the sentencing court." R.C. 2953.08(G)(2). "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing * * * if it clearly and convincingly finds * * * [t]hat the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant; [or] * * * [t]hat the sentence is otherwise contrary to law." R.C. 2953.08(G)(2).

{¶13} "A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing" which are "to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). When imposing a felony sentence, the trial court "has discretion to determine the most effective way to comply with the purposes and principles of sentencing" and "shall consider the factors * * * relating to the seriousness of

5

the conduct" and "to the likelihood of the offender's recidivism." R.C. 2929.12(A).

{¶14} "Trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, paragraph seven of the syllabus. The Ohio Supreme Court has described R.C. 2929.12 as "a general judicial guide for every sentencing." *Id.* at ¶ 36. "[T]here is no mandate for judicial fact-finding in the general guidance statutes. The court is merely to 'consider' the statutory factors." *Id.* at ¶ 42; *State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381, ¶ 31 (R.C. 2929.11 and 2929.12 do not require a trial court to make specific factual findings).

{¶15} The Ohio Supreme Court has recently clarified the application of R.C. 2953.08(G)(2) in relation to R.C. 2929.11 and .12. *Jones,* 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649. The Court held that R.C. 2953.08(G)(2)(a) does not allow an appellate court to vacate a sentence based on "lack of support in the record for a trial court's findings under R.C. 2929.11 and 2929.12." *Id.* at ¶ 29. It concluded that "an appellate court's determination that the record does not support a sentence does not equate to a determination that the sentence is 'otherwise contrary to law'" as set forth in R.C. 2953.08(G)(2)(b). *Id.* at ¶ 32. Thus, "[n]othing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *Id.* at ¶ 42.

{¶16} In her supplemental brief, Amero contends that *Jones* is "inapplicable to the instant appeal" because "the allegations of sentencing error here are specific and assert

6

that, as a matter of law, the sentencing court improperly considered the seriousness factors under R.C. 2929.12(B) and the recidivism less likely factors under R.C. 2929.12(E)." She argues that this appeal is premised on the fact that the trial court "violated the clear command of R.C. 2929.12 by considering the school official/student relationship as a more serious factor under R.C. 2929.12(B)" and contends that "whether the sentencing court erred as a matter of law in considering prohibited factors is cognizable on appeal."

{¶17} While Amero emphasizes that she only questions whether the trial court applied the correct factors and not the weight assigned to each factor, throughout her original brief she provides analysis as to whether the factors supported the court's sentence and emphasizes how, like in *Polizzi*, when considering all of the factors, the sentence was not supported by the evidence. To the extent that addressing these specific issues would involve weighing the R.C. 2929.11 and .12 factors to determine whether the court's sentence was appropriate, consistent with *Jones*, we will not conduct such a weighing of the evidence or substitute this court's judgment for that of the trial court.

{¶18} We will, however, address Amero's contention that the lower court was not permitted to consider the school official/student relationship as a factor making the crime more serious under R.C. 2929.12(B) as it goes to a legal issue independent of weighing the evidence. *See State v. Chase*, 11th Dist. Lake Nos. 2020-L-070 and 2020-L-071, 2021-Ohio-1006, ¶ 10 ("[w]e will address [appellant's] argument to the limited extent that [he] claims * * * the trial court explicitly relied on facts that it was precluded from considering by law").

{¶19} Amero argues that the lower court was not permitted to consider that the

7

crime of Sexual Battery occurred against students while she was in the position of a school principal as a factor making the crime more serious pursuant to R.C. 2929.19(B), since this status is also an element of the offense. In support of this argument, she relies on *Polizzi*, 2019-Ohio-2505, wherein this court reversed a sentence under similar circumstances involving a teacher committing Sexual Battery against students. In *Polizzi*, this court found that a sentencing court may not elevate the seriousness of an offense by pointing to an element of the offense itself, and noted that the student/teacher relationship is "accounted for by the legislature" in setting the level of the offense. *Id.* at ¶ 28.

{¶20} *Polizzi* jointly addressed alleged sentencing errors in relation to the application of consecutive sentences pursuant to R.C. 2929.14(C)(4), and R.C. 2929.11 and .12, which set forth factors the sentencing court must consider regarding the purposes and principles of sentencing, the seriousness of the crime, and the risk of recidivism. However, its analysis primarily related to the consecutive sentencing findings, ultimately concluding that, "[u]pon review of the record, there is no support under R.C. 2929.14(C)(4) for some of the findings the trial court made to justify imposition of consecutive sentences for each of the individual offenses for which a plea was entered." *Id.* at ¶ 47. This court has clarified the application of *Polizzi*, confirmed that "[t]he holding in *Polizzi* was that the trial court's *consecutive sentence findings* under R.C. 2929.14(C)(4) were clearly and convincingly not supported by the record," and rejected the argument that elements of the offense cannot be considered when weighing the seriousness factors under R.C. 2929.12. (Emphasis added.) *State v. Banas*, 11th Dist. Lake No. 2019-L-049, 2019-Ohio-5053, ¶ 25; *State v. Brown*, 11th Dist. Lake No. 2020-L-052, 2020-Ohio-4642, ¶ 15 (declining to apply *Polizzi* and rejecting appellant's argument that a court may not

8

consider an element of the offense to elevate the seriousness of the conduct under R.C. 2929.12(B)); *State v. Russell*, 11th Dist. Lake No. 2019-L-138, 2020-Ohio-3243, ¶ 75. In other words, this court has held that elements of the offense *can be considered* in the sentencing court's weighing of factors making the crime more serious under R.C. 2929.12.

{¶21} As this court more fully explained in *Russell*, "[t]he statutory text of R.C. 2929.12(B) does not support a conclusion that a trial court may not recognize an element of an offense in its consideration of the seriousness of an offender's conduct" and "contains no exception for factors that may overlap with the elements of an offense." *Id.* at ¶ 81-82. It further noted that the factor at issue will apply uniformly for all instances of the same offense and, thus, would lead to fair application since R.C. 2929.12(B) requires the court to consider factors "as indicating that the offender's conduct is more serious than conduct normally constituting the offense." (Emphasis omitted.) *Id.* at ¶ 83-84. Pursuant to the foregoing precedent, the trial court was permitted to consider that the crime of Sexual Battery occurred against students while Amero was a school principal as a factor making the crime more serious pursuant to R.C. 2929.19(B). We cannot second-guess how much weight it gave this factor in comparison to others under *Jones.*

{¶22} Finally, to the extent Amero argues that the lower court failed to consider factors making the crime less serious, we emphasize that there is a presumption that a court considered R.C. 2929.12, even where the trial court is silent regarding these factors, unless the defendant affirmatively shows to the contrary. *State v. Claar*, 11th Dist. Portage No. 2020-P-0058, 2021-Ohio-2180, ¶ 11; *State v. Foster*, 11th Dist. Portage No. 2011-P-0087, 2012-Ohio-3744, ¶ 9. We do not find Amero has demonstrated that the trial court failed in its duty to consider all of the required factors under R.C. 2929.11 and .12.

{¶23} The first assignment of error is without merit.

{¶24} In her second assignment of error, Amero argues that the record contains no evidence to support the trial court's consecutive sentence findings, emphasizing that the seriousness of the offense should not have been elevated by her role as a principal since this was an element of the offense and the lack of evidence of harm and seriousness, and citing *Polizzi* in support of her argument.

{¶25} Pursuant to R.C. 2929.14(C)(4), separate prison terms for multiple offenses may be ordered to be served consecutively if the court finds it is "necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public," *and* finds any of the R.C. 2929.14(C)(4)(a)-(c) factors are present. The only applicable factor here is R.C. 2929.14(C)(4)(b): "At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct."

{¶26} "'[T]he clear and convincing standard used by R.C. 2953.08(G)(2) is written in the negative. It does not say that the trial judge must have clear and convincing evidence to support its findings. Instead, it is the court of appeals that must clearly and convincingly find that the record does not support the court's findings.'" (Citation omitted.) *State v. Guth*, 11th Dist. Portage No. 2015-P-0083, 2016-Ohio-8221, ¶ 23, quoting *State v. Rodeffer*, 2d Dist. Montgomery Nos. 25574, et al., 2013-Ohio-5759, ¶ 31; *State v. Forsell*, 11th Dist. Portage Nos. 2019-P-0116, et al., 2020-Ohio-5381, ¶ 15. This

10

Case No. 2020-P-0029

standard has been characterized as "extremely deferential." *Id.* There must be an "evidentiary basis" that is "adequate to fully support the trial court's consecutive-sentence findings." *State v. Gwynne*, __ Ohio St.3d __, 2022-Ohio-4607, ___ N.E.3d __, ¶ 29. "This requires the appellate court to focus on both the quantity and quality of the evidence in the record that either supports or contradicts the consecutive-sentence findings. An appellate court may not, for example, presume that because the record contains *some* evidence relevant to and not inconsistent with the consecutive-sentence findings, that this evidence is enough to fully support the findings." *Id.* In evaluating consecutive sentences, the appellate court is "authorized to substitute its judgment for the trial court's judgment if [it] has a firm conviction or belief, after reviewing the entire record, that the evidence does not support the specific findings made by the trial court to impose consecutive sentences." *Id.*

{¶27} The lower court made the findings required to impose a consecutive sentence: that such sentence is necessary to protect the public from future crime or to punish the defendant; that the sentence is not disproportionate to the seriousness of the defendant's conduct and the danger she poses to the public; and the two offenses were committed as part of a course of conduct and the harm caused by the offenses was so great or unusual that no single prison term adequately reflects the seriousness of the defendant's conduct. However, we clearly and convincingly find that the record lacks an evidentiary basis to fully support the trial court's findings.

{¶28} As to the finding that the harm caused by the offenses was so great or unusual that more than a single term is warranted, the record is devoid of evidence to support such a conclusion. There is nothing in the record to demonstrate the extent of the

11

harm suffered by the victims. The State did not specify what harm was caused to the victims, other than a general statement that sexual abuse causes harm. The PSI includes the facts of the offenses but does not include any statements by the victims of what specific harm they suffered. At the sentencing hearing, the State noted that the victims were present in the courtroom and, rather than speaking, asked that the Court "consider their statements that they've made." To clarify the record, following oral argument, this court remanded to the trial court with instructions to issue an entry stating "whether any victim impact statements exist as part of the trial court record" and to supplement the record on appeal if warranted. The record was not supplemented with any additional material. Thus, there is nothing present in the record allowing this court to discern a justification for this finding. While we recognize that sexual assault and sexual battery are significant offenses, it is necessary that the trial court make a finding, supported by the record, that the harm caused by Amero's actions was "*so great or unusual* that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of" her conduct. (Emphasis added.) R.C. 2929.14(C)(4)(b). Without evidence in the record to demonstrate a basis for this conclusion, such a finding is clearly and convincingly contrary to the record.

{¶29} The lower court did state, when making its consecutive sentencing findings, that "you had the entire community in your hands and you destroyed it," noting that Amero was a superintendent. The State emphasizes that the impact on the community is properly considered to support a finding of harm. *See State v. Martinez*, 6th Dist. Wood No. WD-01-027, 2002 WL 255499, *7 (Feb. 22, 2002) ("[w]e cannot say that the court erred in considering the long term effect of appellant's actions on the community as support for its

12

finding that the harm caused by appellant's offenses was so great or unusual that a single prison term would not adequately reflect the seriousness of appellant's conduct"). However, again, this finding is not supported by the record. The basis for this finding is unclear, since nothing was presented to demonstrate the particular harm caused to the community, and the observation that Amero was superintendent is of limited value given that she was principal rather than superintendent at the time of the offenses. The only tangible evidence regarding the Windham community was a letter from a teacher who worked with Amero at Windham indicating Amero had benefited the community through her work in the Windham schools.

{¶30} The trial court's emphasis on the harm caused focuses primarily on the element of the crime that made Amero's actions criminal: her position as a principal. R.C. 2907.03(A)(7) ("[n]o person shall engage in sexual conduct with another, not the spouse of the offender, when * * * [t]he offender is a teacher, administrator, coach, or other person in authority employed by or serving in a school * * *"). In *Polizzi*, 2019-Ohio-2505, this court, noting case law holding "[a] trial court may not elevate the seriousness of an offense by pointing to a fact that is also an element of the offense itself," held that the court's finding that appellant was a predator was based on his relationship to the victims as their teacher, an element of the sexual battery offenses under R.C. 2907.03(A)(7) and could not be considered to elevate his sentence. (Citation omitted.) *Id.* at ¶ 28, 35, and 47. A similar concern arises here; in the court's brief comments when ordering consecutive sentences, it emphasized Amero's position of authority within the schools and how her conduct in that role caused harm. This role is precisely why she was charged with a crime. If this alone is viewed as grounds to order consecutive sentences, such sentences would

13

be justified in all offenses charged under R.C. 2907.03(A)(7), rather than in those where the harm was "great or unusual."

{¶31} The State argues that *Polizzi* and, in particular, its foregoing holding, is inapplicable for several reasons. First, it argues that this court reached a contrary holding in *State v. Spellman*, 160 Ohio App.3d 718, 2005-Ohio-2065, 828 N.E.2d 695 (11th Dist.): that the element of being an elected official could be considered when ordering consecutive sentences for theft in office and tampering with records. *Id.* at ¶ 30. Given that this case was decided prior to *Polizzi*, we decline to apply its holding here, especially given that *Polizzi* involved the same offense as in the present matter, Sexual Battery committed by the conduct of a school employee in a role of authority. As outlined in the first assignment of error, *Polizzi* does not bar the trial court from considering factors making an offense more serious that involve an element of the offense when determining the length of the sentence for a particular offense. However, *Polizzi* does mandate that a consecutive sentence cannot be based upon a fact that is also an element of the offense. The State also argues that *Polizzi* should not be considered by this court in its analysis here because it applied R.C. 2929.12(D) factors in determining whether the consecutive sentencing factor of risk to the public was present, which is contrary to the Ohio Supreme Court's holding that an appellate court errs by "reviewing [a defendant's] consecutive sentences under R.C. 2929.11 and 2929.12." *State v. Gwynne*, 158 Ohio St.3d 279, 2019-Ohio-4761, 141 N.E.3d 169, ¶ 18. However, even presuming the misapplication of certain factors in *Polizzi*'s analysis on one issue, this does not invalidate other conclusions reached that were unrelated to the weighing of those factors, such as the determination on the applicability of elements of the crime to order consecutive sentences.

14

**{¶32}** The determination that the court's findings were not supported by the record is also buttressed by the fact that Amero presented specific and detailed evidence that she poses a low risk to the public. Her psychiatrist indicated that she had responded well to treatment, that "a number of the factors that contributed to her offending have been reduced or ameliorated," her risk to reoffend was substantially reduced, and she presented a "low to minimal risk to the safety and welfare of the general public." The record does not refute this. There is no other assessment showing a risk of repeated similar conduct in the future.

**{¶33}** The dissenting judge cites several examples in support of the argument that evidence of harm was present in the record, such as potential damage to the students' reputation and that there was more than one victim. However, harm can be inferred in any case where there was a crime but more is required to justify a consecutive sentence. For example, harm to reputation can be inferred in any sexual assault or battery case where the victim's identity becomes known. The harm required to support a consecutive sentencing finding is "great or unusual harm" which is not present in the record in this case. The citation to *State v. Russell*, 11th Dist. Lake No. 2019-L-138, 2020-Ohio-3243, is unavailing. *Russell* is factually distinct and involves examples of great or unusual harm that are not present here, including that the defendant, who was an "uncle figure," sexually abused an underage victim who was 12 to 14 years old over the course of two and a half years. *Id.* at ¶ 2. In addition, the dissent argues that victim statements were not necessary as one will not be given in every case, such as with a toddler victim. We recognize that certain circumstances may allow for the inference of great or unusual harm, as with the abuse of a very young child, and that harm can be established in a

15

variety of ways such as through the testimony of a psychologist. Those circumstances are inapplicable here.

{¶34} Since the lower court made consecutive sentencing findings that were unsupported by the record, particularly in relation to the harm caused by Amero's commission of the offenses, that portion of the sentence ordering Amero's five-year terms for Sexual Battery be served consecutively is reversed. As the record, which was not supplemented by the trial court with any victim statements or additional evidence, does not support consecutive sentencing findings, we modify Amero's sentence to two concurrent terms of five years in prison for Sexual Battery, served with the concurrent term imposed for Sexual Imposition, for an aggregate five-year prison sentence. *See State v. Hawley*, 2020-Ohio-1270, 153 N.E.3d 714, ¶ 25 (8th Dist.) (modifying the defendant's sentences to concurrent terms where the record did not support the findings required for imposition of consecutive sentences).

{¶35} The second assignment of error is with merit.

{¶36} For the foregoing reasons, Amero's individual sentences are affirmed, the determination that the sentences for Sexual Battery be served consecutively is reversed, and Amero's sentence is modified as stated herein. Costs to be taxed against the parties equally.


THOMAS R. WRIGHT, J., concurs with a Concurring Opinion,

MARY JANE TRAPP, J., concurs in part and dissents in part with a Concurring/ Dissenting Opinion.

_____

16

THOMAS R. WRIGHT, J., concurs with a Concurring Opinion.

{¶37} I concur with the lead opinion but write separately to further address issues raised by the dissent. Certainly, when a school principal commits two counts of sexual battery and one count of sexual imposition against students, the offenses could cause harm, and I do not minimize the severity of the offenses. However, as noted by the lead opinion, no written or other victim impact statements were made a part of the record. There is simply *no evidence in the record* to support the conclusion that any arguable harm caused was *so great or unusual* that no single prison term adequately reflects the seriousness of Amero's conduct. *See* R.C. 2929.14(C)(4)(b).

{¶38} The dissent maintains that we have failed to acknowledge evidence in the record supporting the finding of great or unusual harm. The dissent first relies on the PSI report which states that: one victim reported to police that Amero engaged in fellatio twice with him; the second victim reported that Amero grabbed his penis and tried to kiss and touch him on "no more than twenty occasions"; and Amero confessed to these acts. The dissent cites *State v. Russell*, 11th Dist. Lake No. 2019-L-138, 2020-Ohio-3243, ¶ 137 for the proposition that a prolonged sexual relationship supports a finding of great or unusual harm. However, in *Russell* at ¶ 136, "[t]he trial court found that the victim suffered serious psychological harm based on a letter from her psychiatrist setting forth current diagnoses related to a history of sexual trauma." There was therefore *some* evidence in that record permitting the finding of "great or unusual harm." No such evidence exists in this record.[2]

---

2. The dissent erroneously suggests that we have created a new rule that only "written or other victim impact statements" may support a finding of great or unusual harm. Au contraire. Even a cursory reading of *Russell*, cited by the dissent, demonstrates that this court has and will consider any evidence (in that case, the psychologist's letter), as establishing great or unusual harm. The primary disagreement between the majority and the dissent is *not* one of law. It is one of reasonable versus unreasonable inferences.

Case No. 2020-P-0029

{¶39} Moreover, the fact that one victim in this matter reported to police the details of the crime does *nothing* to establish great or unusual harm. Without some basis that would allow for the inference that harm of great or unusual character occurred, the report was merely part of the investigatory process.

{¶40} Further, the victim in *Russell* may have had a prolonged sexual relationship with the defendant, just as the victims in this matter had a similar prolonged relationship. This similarity, however, has nothing to do with a finding of great or unusual harm. In fact, the duration of the relationship is coincidental without some affirmative evidence of some "great or unusual harm." As a court, we must be sensitive and sensible regarding our evaluation of evidential sufficiency. There is no simple gauge to establish the standard that would apply in every case. What one can unequivocally say, however, is that *no* evidence is clearly insufficient evidence. Such is the case in the instant matter.

{¶41} The dissent also focuses on Amero's statements that she damaged the trust the victims have with an adult to be their role model and principal and that she is "sure" the victims are embarrassed and uncomfortable due to the resulting damage to their reputations. However, the PSI report indicates that Amero responded in this fashion to a portion of the pre-probation questionnaire asking, "how *do you think* the victims feel about what happened[?]." (Emphasis added.) There is nothing in the record that supports that Amero's statements were based on anything more than conjecture. Amero's statements merely reflect her speculation regarding the impact of her actions on the victims, not any factual insight into how the victims themselves actually processed the events. That Amero is "sure" that her actions, as an adult in a position of authority, caused the victims' embarrassment, etc., is an unfalsifiable presupposition because it is a claim that, given

18

Case No. 2020-P-0029

this record, is impossible to establish. To wit, the victims did not concede great or unusual harm or embarrassment and thus Amero's purported certainty regarding these experiences is pure speculation.

{¶42} Further, the dissent relies on the sentencing memorandum, wherein the defense acknowledged that this case came to law enforcement's attention due to rumors. Based upon this, the dissent states, "so of course there is additional reputation damage that necessarily comes with fellow students and the community learning about these sexual encounters and the victims' identities." However, again, no record evidence exists to support that any such harm was great or unusual.

{¶43} The existence of rumors or innuendo does not establish any great or unusual harm, let alone the apparent "self-evident" truth that a student's reputation would necessarily be damaged. Some people may very well be embarrassed and greatly or unusually harmed by rumors of sexual encounters that occurred with a school administrator; others might experience no effect whatsoever. In essence, it is impossible, without direct evidence that the victims in this matter were *actually* greatly or unusually harmed by the so-called rumors, to use the alleged rumors to manufacture support for the statutory finding that the harm in this case was so great or unusual that no single prison term would reflect the seriousness of appellant's conduct.

{¶44} The dissent next points to the fact that Amero was charged with intimidation of a crime victim or witness, which was dismissed as part of her plea agreement. From this, the dissent assumes the truth of the charges, and maintains that threats designed to silence the victims "necessarily results in great harm or injury." However, this court has noted, "it would certainly be improper for the trial court to elevate [the accused]'s pending

19

felony charge to the status of a conviction for sentencing purposes when [the accused] had not actually been convicted of the pending charge." *State v. Hoolihan*, 11th Dist. Trumbull No. 2012-T-0023, 2012-Ohio-5837, ¶ 17. No evidence of threats, much less great or unusual harm resulting from threats, appears in the record.

{¶45} Moreover, the dissent fails to acknowledge that any given witness might use a defendant's attempt to intimidate as a stronger basis for testifying. Intimidation of a witness or the attempt to do so is practically meaningless *unless* the witness is "intimidatable" – there is no such evidence to support this conclusion. Thus, the dissent's additional "self-evident" truth (namely, that an attempt to silence the victims "necessarily" results in great harm or injury) completely lacks substantiation and is based upon unfounded presupposition.

{¶46} Some people, in their day-to-day routine, have a built-in tendency to jump to conclusions on the basis of limited or no evidence. Sometimes they will get a notion, premised upon a few scant tidbits of evidence and settle immediately into a position. They then promote "intuitions" or "half-truths" to the status of full and incontrovertible facts without bothering to consider the foundation for the beliefs. Or, alternatively, they might reason from their own personal experiences (i.e., from anecdotal evidence) to draw conclusions that run far in advance of or far afield from the actual evidence. We, as a court, must evaluate an actual record and, in doing so, must resist the temptation to treat that which might be consistent with our own notions as part of that record when no such evidence exists.

{¶47} The Second Appellate District has underscored this point in discussing the consecutive sentencing statutory scheme:

Case No. 2020-P-0029

Whenever a trial court is required to make a finding, there obviously must be a factual basis in the record for the finding; otherwise the requirement would meaninglessly exalt form over substance. The making of a finding adverse to the defendant when there is nothing to support that finding is analogous to a jury's returning a guilty verdict when there is no evidence in the record to support an essential element of the offense. In either case, the error is plain – in the sense that the result would clearly have been otherwise had the error not occurred.

*State v. Carter*, 2d Dist. Champaign No. 2005-CA-24, 2006-Ohio-984, ¶ 25.

{¶48} The dissent has relied on pure speculation to support the trial court's finding of great harm. As no evidence of great harm appears in the record, I agree with the lead opinion that the record clearly and convincingly fails to support this finding. In other words, the lack of any such evidence is sufficient to create a "firm belief" that the trial court's determination is unsupported by the record. This is, put simply, our standard of review for consecutive sentences on appeal. Further, as the error occurred at the point of the trial court imposing consecutive sentences, I agree that it is appropriate to modify Amero's sentence by reversing the imposition of consecutive sentences.

_____

MARY JANE TRAPP, J., concurs in part and dissents in part with a Concurring/ Dissenting Opinion.

{¶49} While I concur with the majority's disposition of Ms. Amero's first assignment of error, I must respectfully dissent from its finding that there is clear and convincing evidence that the record does not support the trial court's consecutive sentence findings.

21

Case No. 2020-P-0029

**{¶50}** I agree that the only applicable R.C. 2929.14(C)(4) factor for our consideration in this case is (b): "At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct." The majority correctly recites the clear and convincing standard to be applied to the review of a R.C. 2929.14(C)(4)(b) determination, noting it is written in the negative (which has proven to be problematic for more than one court), but then fails to acknowledge the evidence in this record that supports the trial court's finding.

**{¶51}** A review of the relevant case law is helpful to better articulate the standard of review and its application. The Supreme Court of Ohio has held that "[i]n order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus. Under R.C. 2953.08(G)(2)(a), upon de novo review, a court of appeals may increase, reduce, or otherwise modify a sentence if it clearly and convincingly finds "[t]hat the record does not support the sentencing court's findings under * * * (C)(4) of section 2929.14 * * *." *See State v. Gwynne*, 158 Ohio St.3d 279, 2019-Ohio-4761, 141 N.E.3d 169, ¶ 16, and *State v. Gwynne*, Slip Opinion No. 2022-Ohio-4607, ¶ 12 ("*Gwynne II*").

**{¶52}** "'Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty

22

as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶53} As the Supreme Court of Ohio recently explained in *Gwynne II*, the appellate court is constrained to considering only the findings in R.C. 2929.14(C)(4) that the trial court has actually made. It then applies a clear and convincing evidence standard of proof and "determine[s] whether it has a firm belief or conviction that the proposition of fact represented by each finding is not true on consideration of the evidence in the record." *Id.* at ¶ 21. "[T]he deference that a trial court's consecutive-sentence findings receive comes from the language of R.C. 2953.08(G)(2), which imposes a higher evidentiary standard to reverse or modify sentences." *Id.* at ¶ 22. The court also noted that the higher evidentiary standard for changing a trial court's order of consecutive sentences does not mean "'clear and *unequivocal*.'" (Emphasis sic.) *Id.* at ¶ 23, quoting *Ledford* at 477. This recent clarification of the standard of review in consecutive sentencing cases confirms that meaningful appellate review of a consecutive sentence does exist and that deference to the trial court is not the evidentiary standard for changing a consecutive sentence. However, *Gwynne II* changed nothing regarding the "lack of evidence in the record" to support the imposition of consecutive sentence metric.

{¶54} What then is the record to be reviewed?

{¶55} "[T]he term 'record' as used in R.C. 2953.08(G)(2) is very broad. It encompasses all of the proceedings before the court, not just the sentencing." *State v.*

23

*Venes*, 2013-Ohio-1891, 992 N.E.2d 453, ¶ 22; *see Gywnne II* at ¶ 28, fn. 6; R.C. 2953.08(F)(1)-(4). "[W]hile the court has the obligation to make separate and distinct findings under R.C. 2929.14(C)(4) before imposing sentence, support for those findings may appear anywhere in the 'record' and not just at the time the court imposes consecutive sentences." *Venes* at ¶ 22. The Supreme Court of Ohio has explained that "as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Bonnell* at ¶ 29. This concept remains unchanged by *Gwynne II.*

{¶56} Applying these principles to this record, Ms. Amero has not established that the record clearly and convincingly does not support the trial court's finding under R.C. 2929.14(C)(4)(b), nor does a de novo review of the record create a firm belief or conviction in my mind that the findings are not supported by the evidence in this record—the whole record.

{¶57} The majority opinion narrowly views the record and effectively creates a new rule that only "written or other victim impact statements" may be considered record evidence supporting a finding of great or unusual harm. Despite the absence of any formal victim impact statements, the record does contain (and the majority acknowledges this record evidence) a pre-sentence investigation ("PSI") report. The report reveals that the victims described the nature and number of Ms. Amero's acts of sexual conduct in their reports to the police and that Ms. Amero confirmed them in a confession. Ms. Amero's sexual conduct with each victim was not a "one-off" aberration or a loss of control that was not repeated. Rather, Ms. Amero engaged in fellatio with one victim on two separate

24

occasions in her office. The other victim reported not only that she grabbed his penis while in her office, but also that she tried to kiss him and touched him on "no more than twenty occasions." Thus, evidence in the record indicates that Ms. Amero is a serial offender with two different victims, not someone who just lost control on one occasion.

{¶58} This court has recognized that "an offender's prolonged sexual relationship with an underage victim under his [or her] care in some capacity supports a trial court's finding that the harm caused was so great or unusual that no single prison term adequately reflects the [seriousness of the] offender's conduct." *State v. Russell*, 11th Dist. Lake No. 2019-L-138, 2020-Ohio-3243, ¶ 137. The extent and repetitive nature of Ms. Amero's sexual conduct with each victim supports a finding of great or unusual harm.

{¶59} The PSI also notes Ms. Amero's acknowledgments that she "damaged" the trust relationship that the victims have with "an adult to be their role model and principal" and that she is "sure" the victims are "embarrassed and uncomfortable because their names and reputation are all a part of this." Additionally, the defense's sentencing memorandum acknowledges that this case came to the police's attention from rumors, so of course there is additional reputation damage that necessarily comes with fellow students and the community learning about these sexual encounters and the victims' identities.

{¶60} The record further demonstrates that Ms. Amero was charged with Intimidation of a Victim or Witness in a Criminal Case, which was dismissed as part of her plea agreement. A sentencing court may consider charges that have been dismissed or reduced under a plea agreement. *State v. Rush*, 2013-Ohio-2728, 996 N.E.2d 503, ¶ 13

Case No. 2020-P-0029

(5th Dist.). Layering repeated sexual conduct with threats designed to keep the victims from reporting the conduct necessarily results in great or unusual harm.

{¶61} The majority's discussion conflates two separate consecutive sentence findings. Ms. Amero argued on appeal that the record does not support a finding under R.C. 2929.14(C)(4)(b) (involving "great or unusual" harm). The majority appears to discuss the "seriousness" of Ms. Amero's conduct, which relates to the second factor in R.C. 2929.14(C)(4) ("[C]onsecutive sentences are not disproportionate to the *seriousness* of the offender's conduct and to the danger the offender poses to the public.") (Emphasis added.) This court has explained that "[u]nder the plain language of R.C. 2929.14 [(C)(4)(b)], the 'so great or unusual' factor does not apply to the *conduct* of the defendant but rather to the *harm* caused by such conduct." (Emphasis added.) *Russell* at ¶ 125; *see State v. Smith*, 2d Dist. Montgomery No. 28265, 2019-Ohio-5015, ¶ 76.

{¶62} Even if the seriousness of Ms. Amero's conduct is considered, this court has held that "*[t]he nature and extent* of [the defendant's] conduct *over an extended time period in his [or her] role as a public official* can operate to augment the seriousness of his [or her] conduct for sentencing purposes." (Emphasis added.) *State v. Spellman*, 160 Ohio App.3d 718, 2005-Ohio-2065, 828 N.E.2d 695, ¶ 30 (11th Dist.).

{¶63} The majority rests its conclusion that the "record is devoid of evidence" of great or unusual on the following two grounds: one, "the State did not specify what harm was caused to the victim, other than a general statement that sexual abuse causes harm," and two, "the PSI includes facts of the offenses but does not include any statements by the victim of what specific harm they suffered." If we require the victim to make a statement detailing the specifics of the harm caused, how would a toddler be able to

26

communicate the "specific harm" caused by sexual abuse?  How would any court then be able to run sentences consecutively?

{¶64} Finally, while we have authority to modify a sentence, I believe we should generally avoid being in the resentencing business.  If I shared the majority's view of the record in this case, I would vacate the sentence and remand for resentencing.

Case No. 2020-P-0029